491 S.E.2d 263

**The STATE, Respondent,**

v.

**John GREEN, Appellant.**

No. 2700.

Court of Appeals of South Carolina.

Heard May 7, 1997.

Decided July 21, 1997.

---

582

Assistant Appellate Defender M. Anne Pearce, of South Carolina Office of Appellate Defense, Columbia, for appellant.

Attorney General Charles Molony Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General Caroline Callison Tiffin, Columbia; and Solicitor Wade S. Kolb, Jr., Sumter, for respondent.

HOWELL, Chief Judge.

John Green was indicted on two counts of first-degree criminal sexual conduct, one count of second degree criminal sexual conduct with a minor, and one count of committing a lewd act upon a child, all arising from incidents involving his eleven-year-old daughter. He was convicted of both counts of first-degree criminal sexual conduct and of the charge of committing a lewd act upon a minor. Green appeals, challenging only the trial court's denial of his motion for directed verdict on the first-degree criminal sexual conduct charges. Green does not challenge his lewd act conviction. We reverse and remand.

## I.

Shortly before her eleventh birthday, the victim and her younger brother moved from New York to Lee County to live with Green. Green's house was small, with only one bedroom. The victim slept in the bedroom with Green, and her brother slept on the sofa in the living room. On the first night that the victim stayed with Green, she took a shower before going to bed. While the victim was still in the bathroom, Green used a pair of clippers to shave her pubic hairs. Green told her not to put on her nightgown and he rubbed baby oil all over her body, including her breasts and vaginal area. The victim finally went to sleep, but awoke to find Green performing oral sex on her.

According to the victim, Green performed oral sex on her approximately three times a week, every other week. Sometimes the victim was awake when the incidents began, and other times she would wake up to find him performing oral sex on her. The victim testified that Green's hands were on her

shoulders during the assaults. She stated she tried to move once, but that Green told her to relax.

The victim also testified that Green would "feel" her—touching her bottom and breasts—and that Green clipped her pubic hairs on one other occasion. The victim testified that on one occasion he "stuck his penis halfway inside [her] vagina," but stopped when she told him it hurt. Approximately three months after she moved to Lee County, the victim reported the assaults to Green's former girlfriend.

Dr. Elizabeth Baker, who was qualified as an expert in the diagnosis of sexually abused children, testified at trial. Dr. Baker stated that the victim had inflamed pubic hair follicles and concluded that the condition was most likely caused either by shaving or cutting. Dr. Baker also testified that there was an interruption in the victim's hymen that was caused by some kind of blunt force penetrating trauma.

## II.

On appeal, Green contends he was entitled to a directed verdict on the two counts of first-degree criminal sexual conduct (CSC) because the State presented no evidence that he used aggravated force in the commission of the crimes. We agree.

Green was charged with two counts of first-degree CSC pursuant to S.C.Code Ann. § 16–3–652 (1985). Under section 16–3–652, a sexual battery amounts to first-degree CSC if "[t]he actor uses aggravated force to accomplish sexual battery." S.C.Code Ann. § 16–3–652(1)(a) (1985).[1] "Aggravated force" is defined as the use of "physical force or physical violence of a high and aggravated nature to overcome the victim." S.C.Code Ann. § 16–3–651(c) (1985). Aggravated

---

1. A sexual battery is also first-degree CSC if "[t]he victim submits to sexual battery by the actor under circumstances where the victim is also the victim of forcible confinement, kidnapping, robbery, extortion, burglary, housebreaking, or any other similar offense or act." S.C.Code Ann. § 16–3–652(1)(b). The indictment alleged that Green committed the batteries against the victim through the use of aggravated force, and the State conceded at trial that there was no evidence to support first-degree CSC under subsection (b). Thus, this Court is concerned only with whether there was evidence of aggravated force as required by subsection (a).

force also includes the threat of the use of a deadly weapon. *Id.*

At trial, the State borrowed from the law of assault and battery of a high and aggravated nature (ABHAN) and argued that the aggravated force requirement for first-degree CSC is satisfied if any of the ABHAN's "circumstances of aggravation" are present. We disagree.[2]

Assault and battery of a high and aggravated nature is the unlawful act of violent injury to another accompanied by circumstances of aggravation. *State v. Frazier*, 302 S.C. 500, 397 S.E.2d 93 (1990); *State v. Foxworth*, 269 S.C. 496, 238 S.E.2d 172 (1977); *State v. Small*, 307 S.C. 92, 413 S.E.2d 870 (Ct.App.1992). Circumstances of aggravation include the infliction of serious bodily injury, great disparity in the ages or physical conditions of the parties, a difference in sexes, the purposeful infliction of shame and disgrace, taking indecent liberties or familiarities with a female, and resistance to lawful authority. *Foxworth*, 269 S.C. at 498, 238 S.E.2d at 173; *State v. Hollman*, 245 S.C. 362, 140 S.E.2d 597 (1965).

As is evident from the above list, many of the circumstances of aggravation for purposes of ABHAN have nothing to do with the degree of force associated with the attack. In fact, a conviction for ABHAN may be sustained even if no real force was used against the victim. *See, e.g., State v. Williams*, 257 S.C. 257, 185 S.E.2d 529 (1971) (affirming ABHAN conviction in case where the defendant put his hands through the open window of the victim's car and one of his hands rubbed the back of the victim's neck as she was driving away); *cf. State v. DeBerry*, 250 S.C. 314, 319–20, 157 S.E.2d 637, 640 (1967) ("Serious bodily harm to the prosecuting witness is not necessary to establish an assault and battery of a high and aggravated nature. Should a stranger on the street embrace a young lady, or a large man improperly fondle a child, the assault and battery would be aggravated though no actual

---

**2.** We note that the State does not appear to fully embrace this theory in its appellate brief, suggesting that this Court may affirm the trial court's decision on grounds other than those stated by the trial court. Nonetheless, the State does argue that aggravated force can be inferred because of the "disparity in size and age between [the victim] and [Green]."

bodily harm was done."), *cert. denied,* 391 U.S. 953, 88 S.Ct. 1857, 20 L.Ed.2d 867 (1968).

■ On the other hand, whether a sexual battery amounts to first-degree CSC under section 16–3–652(1)(a) is dependent on the degree of force used. As noted above, aggravated force is defined as "physical force or physical violence of a high and aggravated nature"; it is not defined as physical force accompanied by or committed under circumstances of aggravation. Therefore, under section 16–3–652(1)(a), a sexual battery constitutes first-degree CSC only if it was accomplished through the use of force *and* the force constitutes aggravated force. Thus, while the "aggravation" necessary for an ABHAN conviction may not be related to the force used in the attack, but, instead, to the general circumstances surrounding the attack, section 16–3–651 clearly requires that the "aggravation" necessary for a first-degree CSC conviction be associated with the degree of force used. To conclude that the presence of any of the circumstances that are considered aggravating for the purposes of ABHAN is sufficient to support a conviction for first-degree CSC would largely read out the force requirements of sections 16–3–651 and 16–3–652. Moreover, such an interpretation would effectively turn every sexual battery committed by a member of the opposite sex into first-degree CSC, rendering virtually meaningless the statutes governing second- and third-degree CSC.[3]

■ Because we conclude that the mere presence of an ABHAN aggravating circumstance is insufficient to sustain a conviction for first-degree CSC, we must now determine whether the State presented any evidence establishing that Green used aggravated force in his attacks on the victim.

When a motion for a directed verdict is made in a criminal case, the trial court is concerned with the existence or nonexistence of evidence, not its weight. *State v. Morgan,* 282 S.C. 409, 319 S.E.2d 335 (1984); *State v. Barksdale,* 311 S.C.

---

3. If the sexual battery were committed by a male upon a female victim, the crime would constitute first-degree CSC because it involved the taking of indecent liberties with a female, an aggravating circumstance for purposes of ABHAN. Similarly, an attack by a woman upon a man would amount to first-degree CSC because of the difference in sexes. *See Foxworth,* 269 S.C. at 498, 238 S.E.2d at 173.

210, 428 S.E.2d 498 (Ct.App.1993). The motion should be granted if the evidence merely raises a suspicion that the accused is guilty. *State v. Schrock,* 283 S.C. 129, 322 S.E.2d 450 (1984); *State v. Brownlee,* 318 S.C. 34, 455 S.E.2d 704 (Ct.App.1995). However, if the State presents any evidence which reasonably tends to prove the defendant's guilt, or from which the defendant's guilt can be fairly and logically deduced, the case must go to the jury. On appeal from the denial of a motion for directed verdict, this court must view the evidence in a light most favorable to the State. *State v. Childs,* 299 S.C. 471, 385 S.E.2d 839 (1989); *Schrock,* 283 S.C. at 132, 322 S.E.2d at 452.

The State argues that force can be inferred from the victim's testimony that it hurt when Green performed oral sex on her and from Dr. Baker's testimony that the tear to the victim's hymen was caused by blunt force penetrating trauma and that the tear would have been painful. We disagree. Clearly, this testimony is relevant to a question of whether a sexual battery[4] occurred. *See State v. Mathis,* 287 S.C. 589, 340 S.E.2d 538 (1986) (holding that the victim's testimony that the defendant touched her with his penis and that it hurt was evidence of an intrusion, and, therefore, was evidence that a sexual battery occurred). However, the fact that the sexual battery itself may have been painful does not support an inference that the battery was accomplished through the use of force.

Moreover, contrary to the State's position, the evidence concerning Green's shaving of the victim's pubic hairs does not establish that Green used any force when committing the sexual batteries. Preliminarily, we note that these acts do not constitute sexual batteries and were removed in time and place from the sexual batteries. Nonetheless, assuming that any force connected with these incidents can be used to establish that the sexual batteries were committed through the use of force, we find no evidence in the record from which

---

4. *See* S.C.Code Ann. § 16–3–651(h) (1985) (defining sexual battery as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any intrusion, however, slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, except when such intrusion is accomplished for medically recognized treatment or diagnostic purposes").

it could be inferred that Green used any force while shaving the victim. The victim testified only that Green shaved her on two separate occasions—the record is devoid of any evidence that Green held her down or otherwise used any force in connection with these acts. Thus, because there is no evidence that Green used *any* force when shaving the victim's pubic hairs, the shaving incidents cannot be used as evidence that Green used *aggravated* force when committing the sexual batteries.

While the victim testified that Green had his hands on her shoulders during the attacks, she did not testify that he held her down or otherwise used any force. Instead, when asked whether she ever tried to make him stop, the victim stated, "I tried to move once, but he told me to relax." Clearly, the victim's testimony demonstrates the extent to which she acquiesced to Green's exercise of his parental authority; however, it does not support an inference that Green used any force to accomplish the sexual batteries.

Viewing the evidence in the light most favorable to the State, we find no evidence that Green used *any* force, much less aggravated force, when committing the sexual batteries. The trial court, therefore, should have granted Green's motion for directed verdict on the first-degree CSC charges. Accordingly, for the foregoing reasons, the decision of the trial court is hereby reversed, and the case is remanded for entry of judgment of acquittal on the two counts of first-degree CSC.[5]

**REVERSED and REMANDED.**

HEARN and ANDERSON, JJ. concur.

---

**5.** The victim testified that the first attack occurred a few weeks before her eleventh birthday. Thus, from the record before us, it appears that the evidence would have supported a first-degree CSC charge against Green pursuant to S.C.Code Ann. § 16–3–655(1) (1985) ("A person is guilty of criminal sexual conduct in the first degree if the actor engages in sexual battery with the victim who is less than eleven years of age."). However, Green was not indicted under section 16–3–655(1).