524 S.E.2d 637

**The STATE, Respondent,**

v.

**Abdullah Hakeem MUHAMMED, Appellant.**

**No. 3076.**

Court of Appeals of South Carolina.

Heard Oct. 7, 1999.

Decided Nov. 22, 1999.

Rehearing Denied Jan. 29, 2000.

24

Assistant Appellate Defender Melissa J. Reed Kimbrough, of SC Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott and Senior Assistant Attorney General Norman Mark Rapoport, all of Columbia; and Solicitor Thomas E. Pope, of York, for respondent.

HEARN, Judge:

Abdullah Hakeem Muhammed was indicted on one count each of trafficking in crack cocaine, possession of cocaine with intent to distribute within proximity of a public park, and possession of a firearm during the commission of a violent crime. He was acquitted of possession of a firearm, convicted on the other charges, and sentenced on each to five year concurrent sentences. Muhammed appeals. We affirm.

## FACTUAL BACKGROUND

Muhammed, who lived in Charleston, and his friend Kelon Hardin were at 312 Arnold Street in Rock Hill on the afternoon of June 25, 1997. The house belonged to Hardin's cousin, Lasheba Simpson. Based on an informant's tip, Rock Hill police officers were also in the area looking for a black Ford Escort driven by two men. The officers drove past the house and spotted a black Escort. Muhammed and Hardin were on the front porch. By the time other officers arrived, Muhammed and Hardin had walked away from the house in different directions. Officer Charles Grant stopped Muhammed, who consented to being searched. Officer Grant found nothing incriminating, but detained him and drove him back to 312 Arnold Street. Muhammed had a set of keys in his pants pocket.

The front door was open and Officer Grant walked inside and secured the house. Simpson, the owner, returned home and consented to a search of the premises. The house had two bedrooms, one of which was locked with a padlock. Simpson had a key to the lock, and one of the keys from Muhammed's set of keys opened the lock. Inside the bedroom, the officers found 19.7 grams of crack cocaine stored with shoes in a men's tennis shoe box. Fingerprint testing resulted in no useable latent prints. The shoe box was in a mesh laundry-type bag. The officers also found and seized two pistols.

Muhammed consented to a search of the Escort. From under the passenger seat, the police retrieved forty-two .32 caliber bullets inside a sock. Other items found in the vehicle included three pagers, two of which were clipped to the driver's visor; and a razor blade which later tested to have trace cocaine [1]. From the trunk, the police retrieved a cellular telephone, a telephone recording device, and $1,085 in cash rolled up in a rubber band. Muhammed and Hardin were arrested and tried together. Hardin was acquitted on all counts. Muhammed was convicted of the drug charges.

---

1. The police were unable to determine whether the cocaine was powder or crack cocaine.

## DISCUSSION

■ On appeal, Muhammed argues the trial judge erred in denying his motion for a directed verdict of acquittal on all charges as there was no evidence Muhammed had dominion and control over the drugs and the evidence raised a mere suspicion of his guilt. We disagree.

■ When reviewing the denial of a motion for directed verdict in a criminal case, the evidence must be viewed in the light most favorable to the state. *State v. Huggins*, 325 S.C. 103, 481 S.E.2d 114 (1997); *State v. Green*, 327 S.C. 581, 491 S.E.2d 263 (Ct.App.1997). This court is concerned with the existence or non-existence of evidence and not its weight. *Huggins*, 325 S.C. at 110, 481 S.E.2d at 118; *Green*, 327 S.C. at 586, 491 S.E.2d at 265. In order to survive a motion for directed verdict, the state must present any direct evidence or substantial circumstantial evidence which reasonably tends to prove the defendant's guilt, or from which the defendant's guilt can be fairly and logically deduced. *State v. Kelsey*, 331 S.C. 50, 502 S.E.2d 63 (1998); *Green*, 327 S.C. at 587, 491 S.E.2d at 265. Accordingly, the trial judge should grant the motion for directed verdict in those cases where the evidence merely raises a suspicion that the defendant is guilty. *State v. Green*, 327 S.C. 581, 491 S.E.2d 263 (Ct.App.1997).

In the instant case, we find there was sufficient evidence to submit the case to the jury. One is guilty of trafficking when he "[k]nowingly sells, manufactures, delivers, purchases, or brings into this State ... or is knowingly in actual or constructive possession ... of ten grams or more of ice, crank, or crack cocaine." S.C.Code Ann. § 44–53–375(C)(Supp.1998). "It is a separate criminal offense for a person to distribute, sell, purchase, manufacture, or to unlawfully possess with intent to distribute, a controlled substance while in, on, or within a one-half mile radius of the grounds of a ... park." S.C.Code Ann. § 44–53–445(A)(Supp.1998).

■ Conviction of possession requires proof of possession, either actual or constructive, coupled with knowledge of its presence. *State v. Hudson*, 277 S.C. 200, 284 S.E.2d 773 (1981). "Actual possession occurs when the drugs are found to be in the actual physical custody of the person charged with possession. To prove constructive possession, the State must show a defendant had dominion and control, or the right to

exercise dominion and control.... Constructive possession can be established by circumstantial as well as direct evidence, and possession may be shared." *Id.* at 202–03, 284 S.E.2d at 774–75.

"Where contraband materials are found on premises under the control of the accused, this fact in and of itself gives rise to an inference of knowledge and possession which may be sufficient to carry the case to the jury." *Hudson,* 277 S.C. at 203, 284 S.E.2d at 775. "[C]onstructive possession occurs when the person charged with possession has dominion and control over either the drugs or the premises upon which the drugs are found." *State v. Ballenger,* 322 S.C. 196, 199, 470 S.E.2d 851, 854 (citing *State v. Ellis,* 263 S.C. 12, 207 S.E.2d 408 (1974)). Possession requires more than mere presence. The State must show the defendant had dominion or control over the thing allegedly possessed or had the right to exercise dominion or control over it. *State v. Ellis,* 263 S.C. 12, 23, 207 S.E.2d 408, 413 (1974) (citing *State v. Tabory,* 260 S.C. 355, 196 S.E.2d 111 (1973)).

The trial court properly denied Muhammed's motion for a directed verdict because the record contains sufficient evidence to fairly and logically deduce guilt. Because no drugs were found on Muhammed's person, our analysis proceeds under constructive possession. We find the record establishes sufficient evidence Muhammed exercised dominion and control over the cocaine.

The informant, a local drug dealer, testified he was playing poker at a convenience store when Hardin approached him, presenting a drug deal. The informant testified Hardin had a sealed plastic bag filled to the top with individual rocks of crack and two pistols. The informant testified Muhammed was with Hardin at the time, sitting in the car. The deal was not consummated. The informant testified he told Hardin they were on his "turf" and any drug dealing would be done by the informant. The following day, the informant testified, he again saw Hardin and Muhammed in the neighborhood, and followed their black Escort. The informant notified Officer Grant of the Rock Hill police, giving descriptions of the car, Hardin and Muhammed, and the house.

Officer Grant testified Muhammed consented to a search of his person. Grant testified Muhammed had keys in his pocket

but he did not recover them at that time. Another officer then searched the vehicle, with Muhammed's consent, and discovered the razor, cash, telephone equipment, and pagers. Grant further testified some crack was found on the ground near the house. When Simpson consented to a search of her house, the officers discovered the locked bedroom. Grant testified he retrieved a key from Muhammed's key ring to unlock the bedroom. The key ring also held keys to the black Escort.

Simpson testified Muhammed and Hardin had been visiting her for two days prior to this incident, and had access to the house while she was gone. She testified one of them carried a mesh bag of boxed shoes into the bedroom. Simpson further testified she arrived home one day and Muhammed and Hardin were putting a lock on the bedroom door. They claimed to be locking up their cooler of food and beverages to prevent their use by other visitors. Simpson testified they gave her one key and Muhammed kept the other key. Simpson also testified the crack did not belong to her. Simpson denied the key to the bedroom belonged to her brother, Pedro. Simpson referred to Muhammed in her testimony by the nickname "Smurf." [2]

We conclude there was sufficient evidence of Muhammed's control over the drugs for the trial judge to properly deny Muhammed's motion for a directed verdict. Muhammed argues this court should reverse this decision in light of *United States v. Dunlap*, 28 F.3d 823 (8th Cir.1994). In *Dunlap*, two police officers observed Dunlap's apartment as the result of informant tips. One of the officers left to apply for a search warrant. Dunlap's girlfriend left the apartment, returning approximately ten minutes later with Cornelius Coleman. The officers had no information about Coleman, and had not observed him during their surveillance. As both officers approached the apartment with the search warrant, Dunlap opened the door from the inside. Coleman was standing inside the apartment, and had a handgun in his pocket. The officers found cocaine base in the kitchen, and cocaine powder in the bedroom. After his arrest, Coleman asked the officers

---

**2.** Officer Jeter also participated in the surveillance of Simpson's house and the Escort. Jeter testified Muhammed's key ring contained a cartoon "Smurf" character.

to retrieve his hat from the kitchen. Coleman was convicted of possession with intent to distribute, and a related firearms charge.

Coleman argued the evidence against him was insufficient to support the jury's verdict. The court agreed and reversed the conviction, finding constructive possession should not be lightly imputed to one found in another's apartment or home. The court looked at the closeness of the relationship between the appellant and the person whose actual possession is not disputed, the presence or absence of valuable or important personal items belonging to the appellant, and the degree to which the actual relationship between the appellant and the actual possessor was related to criminal activity. The court found the evidence could not allow a reasonable jury to be convinced beyond a reasonable doubt that Coleman had constructive possession of the cocaine or that he aided or abetted Dunlap.

We do not find *Dunlap* dispositive of this case. Muhammed had a key to the bedroom on his person, and unrestricted access to the house. We find substantially more evidence of Muhammed's constructive possession of the drugs in this case than the government offered in *Dunlap*. Accordingly, the conviction is

**AFFIRMED.**

CURETON and HOWARD, JJ., concur.