539 S.E.2d 71

**The STATE, Respondent,**

v.

**Scott HARRISON, Appellant.**

**No. 3257.**

Court of Appeals of South Carolina.

Heard Oct. 12, 2000.

Decided Oct. 30, 2000.

Rehearing Denied Jan. 8, 2001.

Assistant Appellate Defender Tara S. Taggart, of South Carolina Office of Appellate Defense, of Columbia, for Appellant.

Attorney General Charles M. Condon and Chief Deputy Attorney General John W. McIntosh, both of Columbia; and Solicitor David P. Schwacke, of N. Charleston, for Respondent.

ANDERSON, Judge:

Scott Harrison appeals from his conviction for simple possession of cocaine. The briefed issues are: (1) whether the trial court erred by denying Harrison's requested jury charge regarding evidence of good character and good reputation and (2) whether any error can be considered harmless. We reverse and remand for a new trial.

## FACTS/PROCEDURAL BACKGROUND

At approximately 2:30 a.m. on July 21, 1996, Officer Timothy Hathaway, with the Charleston County Sheriff's Department, was patrolling a "high drug and crime area" of North Charleston when he saw two men standing very close together who "appeared to be in some type of transaction." The men were "facing away from" Officer Hathaway. When the men saw Hathaway, one ran from the scene and was never apprehended. Officer Hathaway observed the other man, later identified as Harrison, drop a "small white object" from his left hand onto the ground in front of him. Harrison then turned and began walking towards Hathaway. The officer patted Harrison down for weapons and placed him in the patrol car. Harrison had a "wad of bills" in his right hand.

Another officer who had arrived on the scene retrieved the object, which was a plastic baggie containing a white powder

substance that field tested positive for cocaine. During the pat-down and while he was in the patrol car, Harrison became "hysterical," insisting the drugs did not belong to him and referring to the "wad of bills" in his right hand. Harrison told police he intended to buy drugs, but that he had not done so.

Harrison was charged with possession of cocaine. He testified on his own behalf at trial. Harrison stated:

> That particular night, a friend of mine asked me to go and meet someone somewhere, at some place. Which was the destination where I went. I have never been there before. And I was going to meet this person, they were going to purchase [drugs] for a friend of mine. But me thinking I was something, I could do it myself, I went there to meet the person and the person wasn't there. So this gentleman had some drugs on him, and I thought I could purchase it myself. You know, instead of waiting for the person to meet me.

The dealer approached Harrison, asked what he needed, and tried to show him the drugs. According to Harrison, although he was trying to buy drugs for his friend, the sale was not completed because the dealer wanted $50 but Harrison only had the $40 his friend provided.

Just after he told the dealer he did not want the drugs, the police car arrived. The dealer ran. Harrison attempted to explain to the officer that he still had the money in his hand and had not purchased the drugs. He admitted to the officer that he was trying to buy drugs but said the transaction had not been completed. Harrison claimed the drugs were not under his control and that he never even held the bag in his hand. Although Officer Hathaway testified there was plenty of lighting, Harrison recalled the other officer had to use a flashlight to find the drugs on the ground.

Before his arrest, Harrison worked at Charter of Charleston and Good Will Industries, counseling adolescents. He declared his conduct on the night of his arrest was not part of his normal lifestyle. Harrison professed he made a stupid and costly decision of which he was ashamed. In addition, Harri-

son presented the testimony of Minnie Cutler, a character witness.

At the close of all evidence, the parties presented their arguments and the trial court charged the jury. Defense counsel objected to the charge, arguing the court failed to issue a requested charge that evidence of good character and good reputation may in and of itself create a doubt as to the defendant's guilt. The court refused to charge the requested instruction.

During deliberations, the jury sent the court a note asking the meaning of possession. After the court explained the law of possession, the foreman asked the court to "reread the constructive part of the possession." Upon additional deliberation, the jury sent another note prompting further clarification of the law of possession. The foreman requested the court read the law again without using any examples. After receiving a third note from the jury, the court issued an *Allen* charge. Before retiring to the jury room, the foreman again requested the court read the law of possession, particularly constructive possession. The foreman asked for more facts concerning the location of the crime, whether joint possession was possible, and whether money had to change hands. The court responded that joint possession was possible but refused to answer the other questions. The court reminded the jury the State had the burden of proof.

Harrison was convicted of possession of cocaine. He was sentenced to four months imprisonment or payment of a $750 fine.

## ISSUES

I. Did the trial court err in refusing to instruct the jury that evidence of a defendant's good character and good reputation may in and of itself create a reasonable doubt as to guilt?

II. Was any error in refusing to instruct the jury on the issue of good character and good reputation harmless in light of the fact Harrison was charged with possessing, rather than attempting to possess, cocaine?

*LAW/ANALYSIS*

## I. GOOD CHARACTER AND GOOD REPUTATION CHARGE

Harrison argues the trial judge erred in refusing to instruct the jury regarding evidence of good character and good reputation. We agree.

At trial, Harrison testified as to his community involvement, including counseling adolescents. Additionally, Harrison presented the testimony of a character witness, Minnie Cutler, a foster care supervisor with the Berkeley County Department of Social Services and a pastor of a local church. Cutler testified, in essence, as to Harrison's good character and good reputation. Cutler detailed Harrison's volunteer activities at the church. She stated that during the one and one-half years Harrison had been a member of the church, he served as a trusted member of the finance committee and helped renovate the child care center. Cutler described how Harrison "opened up his home" to two single mothers who needed a place to stay until they could find a job and an apartment.

Thereafter, defense counsel requested the judge charge the jury that "[e]vidence of good character and good reputation may in and of itself create a doubt as to the guilt that should be considered by you . . ., along with all of the other testimony and evidence. Whether the State has proven the defendant guilty beyond a reasonable doubt." The judge refused to charge the requested instruction.

Indubitably, a defendant may introduce evidence of his good character. *State v. Lyles,* 210 S.C. 87, 41 S.E.2d 625 (1947). Generally, where requested and there is evidence of good character, a defendant is entitled to an instruction to the effect that evidence of good character and good reputation may in and of itself create a doubt as to guilt and should be considered by the jury, along with all the other evidence, in determining the guilt or innocence of the defendant. *State v. Green,* 278 S.C. 239, 294 S.E.2d 335 (1982). The good reputation of the accused, if proved, may be taken into consideration by the jury in determining whether or not he committed the crime charged. *Lyles, supra.*

In *State v. Hill,* 129 S.C. 166, 123 S.E. 817 (1924), our Supreme Court considered the propriety of the following jury charge:

"As to good reputation, you can consider that like any other testimony. Not that the law says a man can kill another because he has a good reputation, but the jury can take the good reputation into consideration in determining whether or not he committed a crime."

*Hill,* 129 S.C. at 170, 123 S.E. at 818. On appeal from his conviction for manslaughter, Hill maintained " '[t]he jury should not have been limited, but the good reputation should have been considered, like any other testimony, throughout the whole case, and as bearing thereupon, without any limitation whatever.' " *Id.* at 170, 123 S.E. at 818. The Court articulated:

The charge by its very terms answers the appellant's criticism. Evidence of the defendant's good *reputation* for peace and good order is strongly persuasive of his good *character* in that respect, and is offered for the very purpose stated by the circuit judge, to show the improbability that the defendant would have committed or did commit the crime charged.

*Hill,* 129 S.C. at 170, 123 S.E. at 818 (emphasis in original).

The Supreme Court revisited the issue regarding a jury charge as to good character and good reputation in *State v. Lyles,* 210 S.C. 87, 41 S.E.2d 625 (1947). In that case, the defendant, convicted of assault and battery of a high and aggravated nature, contended the court erred "in failing to charge that the jury 'had a right to consider the defendant's good character and reputation and that it was a substantial fact in the case, if proven, and should be considered by the jury.' " *Id.* at 92, 41 S.E.2d at 627. The Court held:

There can be no doubt of the right of appellant to put in evidence his good character and it was "for the jury to consider it in connection with the other evidence, and determine what force and effect it should have." *State v. Barth,* 25 S.C. 175, 60 Am.Rep. 496 (1886). The good reputation of the accused, if proved, may be taken into consideration by the jury in determining whether or not he committed the

crime charged. *State v. Hill*, 129 S.C. 166, 123 S.E. 817 (1924).

*Lyles*, 210 S.C. at 92, 41 S.E.2d at 627. Although Lyles presented a witness who testified to his peaceable and law-abiding reputation, he did not ask the trial court to give a good reputation charge. Thus, the issue was not preserved for appellate review.

After *Lyles*, the good character and reputation charge was discussed in *State v. Green*, 278 S.C. 239, 294 S.E.2d 335 (1982). On appeal from his conviction for armed robbery, Green claimed the trial court erred in refusing to instruct the jury, as requested, that evidence of good character alone may be sufficient to raise a reasonable doubt of the guilt of the accused. The Court explained:

> Generally, where requested and there is evidence of good character, a defendant is entitled to an instruction to the effect that evidence of good character and good reputation may in and of itself create a doubt as to guilt and should be considered by the jury, along with all the other evidence, in determining the guilt or innocence of the defendant. *State v. Lyles*, 210 S.C. 87, 41 S.E.2d 625.

*Green*, 278 S.C. at 240, 294 S.E.2d at 335. Despite the general rule, the *Green* Court ruled the Circuit judge's refusal to instruct the jury on the issue of good character was not reversible error because the defendant admitted his presence and participation in the robbery. The record conclusively established Green's guilt. The Court concluded the error, if any, could not reasonably have affected the result and was harmless.

▮▮▮ The law to be charged to the jury is determined by the evidence presented at trial. *State v. Hill*, 315 S.C. 260, 433 S.E.2d 848 (1993). A trial court commits reversible error if it fails to give a requested charge on an issue raised by the evidence. *Id.* A trial court has a duty to give a requested instruction that correctly states the law applicable to the issues and which is supported by the evidence. *State v. Peer*, 320 S.C. 546, 466 S.E.2d 375 (Ct.App.1996). *See also State v. Austin*, 299 S.C. 456, 385 S.E.2d 830 (1989) (defendant is generally entitled to requested jury instruction if it is a

correct statement of the law on an issue raised by the indictment); *State v. West,* 138 S.C. 421, 136 S.E. 736 (1927)(it is duty of court to charge jury as to law which is applicable to facts as brought out in testimony).

■ Harrison presented evidence of his good reputation and good character. Moreover, he requested an instruction regarding such evidence. The trial court erred in failing to give the requested charge where the issue relating to Harrison's good character and reputation was raised by the evidence.

In a footnote, the State asserts this issue is not preserved because Harrison "failed to request the instruction before the trial judge's charge on the law." This statement is incorrect. After the judge's charge to the jury, the following exchange occurred:

[Defense Counsel]: I didn't hear you charge the *Lee.*

The Court: I respectfully deny your motion, I don't think that I am going to charge that. That is 33, isn't it?

[Defense Counsel]: 32, Your Honor.

These numerical references reveal either a charge conference took place or defense counsel presented the judge with various numbered charge requests prior to the judge's instruction to the jury. Irrefutably, the issue is preserved.

## II. HARMLESS ERROR

The State contends the court's failure to charge the requested instruction was harmless in light of the evidence at trial. We disagree.

■ To warrant reversal, a trial judge's refusal to give a requested jury charge must be both erroneous and prejudicial. *State v. Hughey,* 339 S.C. 439, 529 S.E.2d 721 (2000). The trial court commits reversible error if it fails to give a requested charge on an issue raised by the evidence. *State v. Burriss,* 334 S.C. 256, 513 S.E.2d 104 (1999). *See also State v. Peay,* 321 S.C. 405, 468 S.E.2d 669 (Ct.App.1996)(trial judge

commits reversible error when he fails to give requested charge on issue raised by indictment and evidence presented).

Harrison was charged with simple possession of cocaine. The relevant powder cocaine statute prohibits only the *possession* of cocaine, and makes no mention of *attempted* possession. *See* S.C.Code Ann. § 44–53–370(c) (1985) ("It shall be unlawful for any person knowingly or intentionally to possess a controlled substance unless the substance was obtained directly from, or pursuant to a valid prescription or order of, a practitioner while acting in the course of his professional practice, or except as otherwise authorized by this article."). While S.C.Code Ann. § 44–53–420 (1985) prohibits an attempt to "commit any offense made unlawful by the provisions of this article," the indictment against Harrison alleged only possession of cocaine, not attempted possession, and the jury was instructed on actual or constructive possession, not attempted possession. Harrison's admission that he tried to purchase cocaine, therefore, cannot be considered an admission of guilt of the crime for which he was indicted.

While Harrison admitted he was attempting to buy the cocaine, he insisted the purchase was not completed. Further, he maintained the drugs were never in his possession or under his control. *See State v. Ballenger,* 322 S.C. 196, 470 S.E.2d 851 (1996) (possession may be actual or constructive; actual possession occurs when drugs are found to be in actual physical custody of person charged with possession, while constructive possession occurs when person charged with possession has dominion and control over either the drugs or premises upon which the drugs are found); *State v. Muhammed,* 338 S.C. 22, 524 S.E.2d 637 (Ct.App.1999) (possession of drugs requires the drugs be found on the defendant's person or be under his dominion and control).

When Officer Hathaway approached, Harrison and the other man were "facing away from" him. Although Officer Hathaway testified he saw Harrison drop the drugs, the disputed testimony of one witness does not amount to *conclusive* proof of guilt. Moreover, given the jury's repeated questions to the trial court, it is clear the jury wrestled with the question of Harrison's guilt. The jury's struggle to apply

the law to the facts and reach a verdict demonstrates the weakness in the State's case against Harrison.

A different verdict might have been reached if the jury had been instructed that evidence of good character and good reputation may in and of itself create a doubt as to guilt and should be considered by the jury, along with all the other evidence, in determining the guilt or innocence of the defendant. The State did not present overwhelming evidence of Harrison's possession of cocaine, and did not try him for attempting to possess cocaine. Thus, the refusal to charge the requested instruction regarding evidence of good character and reputation was not harmless, but was reversible error.

*State v. Green,* 278 S.C. 239, 294 S.E.2d 335 (1982), is distinguishable from the instant case. In *Green,* the Court held the refusal to instruct the jury on the issue of good character was not reversible error because the Court was "not convinced that such refusal prejudiced the appellant." *Id.* at 240, 294 S.E.2d at 335. In contrast to Harrison, Green admitted his presence and participation in the charged crime and, from the whole record, his guilt was conclusively established. Unlike Green, the paucity of evidence of Harrison's guilt is glaring.

## CONCLUSION

We hold a defendant is entitled to a jury instruction regarding evidence of good character and reputation when this type of evidence is presented and the defendant requests the charge. The trial court erred in failing to give the requested charge regarding evidence of good character and good reputation. The error was not harmless. Accordingly, Harrison's conviction for possession of cocaine is reversed and the case is remanded for a new trial.

**REVERSED AND REMANDED.**

GOOLSBY and HUFF, JJ., concur.