567 S.E.2d 505

**The STATE, Respondent,**

v.

**Julius GREEN, Jr., Appellant.**

**No. 3510.**

Court of Appeals of South Carolina.

Submitted Feb. 4, 2002.

Decided June 3, 2002.

Rehearing Denied Aug. 23, 2002.

Dwight C. Moore, of Moore Law Firm, of Sumter, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh and Senior Assistant Attorney General Norman Mark Rapoport, all of Columbia; and Solicitor Randolph Murdaugh, III, of Hampton, for respondent.

SHULER, J.

A jury convicted Julius Green, Jr., of trafficking in cocaine, trafficking in crack cocaine, and distribution of each within one-half mile of a school, and the trial court sentenced him to concurrent ten-year terms of imprisonment on each count. Green appeals, arguing the trial judge erred in denying his motions for directed verdict and judgment notwithstanding the verdict (JNOV). We affirm.

## FACTS/PROCEDURAL HISTORY

On the afternoon of December 1, 1998, Alan Horton and Johnny Goebel of the Beaufort County Narcotics Enforcement Team were patrolling undercover on Lady's Island in an unmarked pickup truck. On Gumwood Drive, a small dirt road, the officers observed two cars parked in opposite directions in the middle of the road. Julius Green was driving one of the vehicles, a rented Chrysler convertible. As Horton and Goebel approached, Green turned his car around and began following the other vehicle. Both vehicles soon drove into a grassy area between two homes; the officers pulled in behind.

Horton exited the pickup and started walking toward the two vehicles. According to Horton, by the time he reached the cars, "Green is running. He's at a full-out sprint, running to a clear-cut field right behind where these two houses are where the car's [sic] parked." Horton did not identify himself as a law enforcement officer at that point. Green continued to flee but eventually stopped at a trash pile. As Horton later testified:

> [Green] stopped and he looked around on the ground. He was right near a trash pile and he placed an object that I couldn't tell at that time what it is, but he placed an object on the ground right next to that trash pile and it was placed down on the ground very carefully.

Following a short pause, Green fled again. Horton stopped at the trash pile long enough to view a plastic bag containing a "white powder substance and white rock type substance," then resumed his chase and eventually lost sight of Green.

Several minutes later Goebel discovered Green, shirtless, hiding in a garage. Horton placed him under arrest. Nearby,

they found the clothes Green had been wearing, a cellular telephone, $330.00 in cash, and a set of car keys. The officers also seized a set of digital scales Green had thrown on the ground by the convertible. Upon a search of the vehicle, Goebel and Horton recovered small metallic hand scales and two Midland radios.

The police retrieved the bag that Green left at the trash pile. Inside were eleven "smoke-colored ziploc bags" of what was later determined to be powder cocaine weighing a total of 11.52 grams, a plastic bag containing a 16.09 gram rock of crack cocaine, and thirty "tiny ziploc bags," each containing "crack cocaine in the amount of 4.38 grams."

On January 11, 1999, a Beaufort County grand jury indicted Green for trafficking in cocaine and crack cocaine and distribution of both within one half-mile of a school. Following a trial on August 21, 2000, a jury convicted Green on all charges, and the trial court sentenced him to four concurrent ten-year terms of imprisonment. This appeal followed.[1]

## LAW/ANALYSIS

When reviewing the denial of a motion for directed verdict in a criminal case, this Court views the evidence in the light most favorable to the State. *State v. Huggins*, 325 S.C. 103, 481 S.E.2d 114 (1997); *State v. Green*, 327 S.C. 581, 491 S.E.2d 263 (Ct.App.1997). The issue is the existence or non-existence of evidence, not its weight. *State v. Kelsey*, 331 S.C. 50, 502 S.E.2d 63 (1998); *Green*, 327 S.C. at 586, 491 S.E.2d at 265. Accordingly, if there exists any direct or substantial circumstantial evidence reasonably tending to prove guilt, the Court must find the motion was properly denied. *Kelsey*, 331

---

1. Although Green asserts eight separate issues on appeal, they may be stated essentially as two arguments, i.e., whether the trial court erred in refusing his motions for directed verdict because 1) the evidence was obtained in violation of the Fourth Amendment and/or state constitution and 2) the State failed to prove the necessary elements of S.C.Code Ann. § 44–53–445 (2002) regarding distribution within one-half mile of a school. In addition, we note that Green's reference to his motions for JNOV, a civil post-trial motion, is misplaced; in a criminal case, a new trial motion "is the only available post-trial motion addressing the sufficiency of evidence." *State v. Miller*, 287 S.C. 280, 287 n. 2, 337 S.E.2d 883, 887 n. 2 (1985). We address Green's arguments, however, because he also properly moved for a new trial.

S.C. at 62, 502 S.E.2d at 69; *Huggins,* 325 S.C. at 110, 481 S.E.2d at 118.

## I. Fourth Amendment Violation

Green first argues the trial court erred in denying his motions on all charges because the State obtained the evidence against him in violation of the state and federal constitutions. This argument is not preserved, as the record reflects no attempt by Green at trial to suppress any evidence on constitutional grounds. Instead, Green attempted to raise the propriety of the police actions in a motion for directed verdict, which was clearly improper.

"A defendant is entitled to a directed verdict when the State fails to produce evidence of the offense charged." *State v. McHoney,* 344 S.C. 85, 97, 544 S.E.2d 30, 36 (2001); *see* Rule 19(a), SCRE ("[T]he court shall direct a verdict in the defendant's favor on any offense charged in the indictment after the evidence on either side is closed, if there is a failure of competent evidence tending to prove the charge in the indictment."). A motion for directed verdict, therefore, contests the *sufficiency* of the State's *properly admitted* evidence. On the other hand, the appropriate vehicle for challenging the admissibility of evidence based on an alleged search and seizure violation is a motion to suppress. *See generally Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) (holding the exclusionary rule barring admission of evidence procured in violation of the Fourth Amendment applicable to the states).

At trial, Green did not move, either in limine or during an evidentiary hearing pursuant to *Blassingame,*[2] to suppress the evidence recovered by Horton and Goebel. Moreover, he failed to object at any time to its admissibility; save for the evidence pertaining to the Midland radios, the State's evi-

---

2. *See State v. Blassingame,* 271 S.C. 44, 47–48, 244 S.E.2d 528, 530 (1978) ("Whenever evidence is introduced that was allegedly obtained by conduct violative of the defendant's constitutional rights, the defendant is entitled to have the trial judge conduct an evidentiary hearing out of the presence of the jury *at this threshold point* to establish the circumstances under which it was seized.") (emphasis added), *modified by State v. Patton,* 322 S.C. 408, 472 S.E.2d 245 (1996).

dence, including the cocaine, was introduced without objection. As a result, Green failed to preserve anything for this Court to review. *See State v. Brannon,* 347 S.C. 85, 552 S.E.2d 773 (Ct.App.2001) (finding Fourth Amendment issue not preserved where defendant failed to join in a motion to suppress); *State v. Primus,* 341 S.C. 592, 603, 535 S.E.2d 152, 158 (Ct.App. 2000) ("It is a fundamental principle that a contemporaneous objection is required at trial to properly preserve an error for appellate review.").

## II. Sufficiency of Evidence Under S.C.Code Ann. § 44–53–445

■ Green next argues the trial court erred in refusing to direct a verdict on the two counts of distribution of a controlled substance within the proximity of a school. We disagree.

At the close of the State's case, Green moved for a directed verdict on the ground that the State failed to prove Beaufort Academy was a school. When all agreed the proof was lacking, the trial court permitted the State to re-open its case and present testimony that Beaufort Academy is a school offering education from kindergarten through twelfth grade. Green asserts this was error.

■ The decision to permit the State to re-open its case and present evidence lies within the sound discretion of the trial court. *State v. Humphery,* 276 S.C. 42, 274 S.E.2d 918 (1981); *State v. Hammond,* 270 S.C. 347, 242 S.E.2d 411 (1978). Because proof that Beaufort Academy is a school was an essential fact related to an element of each offense under § 44–53–445, the trial court did not err in allowing the State to re-open the evidence. *See Humphery,* 276 S.C. at 43, 274 S.E.2d at 918 ("The trial court did not abuse its discretion in allowing the State to reopen and prove value—an essential element of grand larceny."); *State v. Harrison,* 236 S.C. 246, 113 S.E.2d 783 (1960) (finding it within the trial court's discretion to permit reopening and allow the State to offer evidence on an essential fact it was required to prove).

Green further asserts the trial court should have directed a verdict on the proximity charges because the State failed to prove he possessed any controlled substances within one-half

mile of any portion of Beaufort Academy property actually used for school purposes. Section 44–53–445(A) provides in pertinent part:

It is a separate criminal offense for a person to distribute, sell, purchase, manufacture, or to unlawfully possess with intent to distribute, a controlled substance while in, on, or within a one-half mile radius of the *grounds* of a public or private elementary, middle, or secondary school....

S.C.Code Ann. § 44–53–445(A) (2002) (emphasis added).

At trial, Scott Luallin, an employee of the Beaufort County Emergency Management Department trained in the use of global positioning systems, testified the distance from the trash pile to the property line of Beaufort Academy was 300 feet. He also stated the distance from a spot 20 feet from the front door of Beaufort Academy to the trash pile was 2,743 feet, and that a half mile equals 2,640 feet.

To prove Green committed the offenses, the State was required to establish that he possessed the powder and crack cocaine with an intent to distribute while he was within a one-half mile radius of the grounds of an elementary, middle, secondary or vocational school. *See id.; Brown v. State,* 343 S.C. 342, 540 S.E.2d 846 (2001). Green argues that because the State's evidence failed to show he was within a one-half mile distance from the Beaufort Academy school *buildings,* he was entitled to a directed verdict of acquittal. According to Green, "the clear intent of the [L]egislature in enacting § 44–53–445(A) was to prohibit the distribution of drugs within one-half mile of that portion of the school regularly—or at least occasionally—used for school activities and where it could reasonably be assumed students would be present." We disagree.

■■■ A penal statute is construed strictly in favor of the defendant and against the State. *Brown,* 343 S.C. at 348, 540 S.E.2d at 849. This Court's primary purpose in construing a statute, however, is to ascertain the intent of the Legislature. *Id.; State v. Johnson,* 347 S.C. 67, 552 S.E.2d 339 (Ct.App. 2001). In so doing, "words must be given their plain and ordinary meaning without resort to subtle or forced construction to limit or expand the statute's operation." *State v. Blackmon,* 304 S.C. 270, 273, 403 S.E.2d 660, 662 (1991).

When a statute's terms are clear and unambiguous, they must be applied according to their literal meaning. *Id.; Brown,* 343 S.C. at 348, 540 S.E.2d at 850.

Section 44–53–445 clearly and unambiguously prohibits distribution of a controlled substance within a one-half mile radius of school *grounds.* The term "grounds," in common and ordinary usage, means the "land surrounding or attached to a house or other building." *Webster's New World College Dictionary* 627 (4th ed.1999). We therefore find the term as used in § 44–53–445(A) includes all school-owned property contiguous to or surrounding the school's physical plant. To hold otherwise would impermissibly expand the meaning of the statute's clear terms. *See Brown,* 343 S.C. at 349, 540 S.E.2d at 850.[3]

Moreover, this construction is consistent with the purpose and policy underlying drug-free "safety zone" statutes. *See generally* 28A C.J.S. *Drugs & Narcotics* § 275 (1996) ("The purpose of such a statute is not only to create a drug-free atmosphere on school grounds, but also to create a permanent drug free buffer zone around these areas."). As the New Jersey supreme court has noted:

> Although the Legislature surely intended to prevent people from selling drugs to and around school children, it also meant to ensure "that areas surrounding schools must be kept drug free if they are to serve as the primary medium for educating young people as to the dangers of drug use." The insulation of those children was to be complete and total. [I]t is no defense that children were not present, school was not in session, or that [the] defendant was unaware of his/her proximity to school property.

*State v. Ivory,* 124 N.J. 582, 592 A.2d 205, 211 (1991) (internal citations omitted).

Because Green admits the evidence established the trash pile was within one-half mile of the Beaufort Academy proper-

---

**3.** If the Legislature had intended the statute to apply only to areas where school activities are actually conducted, it certainly could have done so. *See, e.g., State v. Ivory,* 124 N.J. 582, 592 A.2d 205, 206–07 (1991) (discussing New Jersey statute prohibiting distribution of controlled substances "while on any school property used for school purposes").

ty line, the trial court did not err in denying his motion for directed verdict on the proximity charges.

**AFFIRMED.**

HEARN, C.J., and CONNOR, J., concur.