735 S.E.2d 240

**The STATE, Respondent,**

**v.**

**Richard Bill NILES, Jr., Appellant.**

**No. 5034.**

Court of Appeals of South Carolina.

Heard Feb. 14, 2012.

Decided Sept. 12, 2012.

Withdrawn, Substituted and Refiled Nov. 14, 2012.

Rehearing Denied Nov. 14, 2012.

528

Robert Michael Dudek, South Carolina Commission on Indigent Defense, of Columbia, and Reid T. Sherard, of Nelson Mullins Riley & Scarborough, LLP, of Greenville, for Appellant.

Attorney General Alan M. Wilson, Chief Deputy Attorney General John W. McIntosh, Senior Assistant Deputy Attorney General Salley W. Elliott, and Assistant Attorney General Brendan J. McDonald, all of Columbia, for Respondent.

WILLIAMS, J.

On appeal, Richard Bill Niles, Jr. (Niles) argues the circuit court erred in declining to charge the jury on voluntary manslaughter because there was evidence that Niles was not the first aggressor. Niles asserts the circuit court incorrectly reasoned Niles was either acting in self-defense or shot the decedent during the commission of an armed robbery. Because voluntary manslaughter and self-defense are not mutu-

ally exclusive, Niles contends he was entitled to a charge on voluntary manslaughter.[1] We reverse and remand.

## FACTS/PROCEDURAL HISTORY

On April 9, 2007, James Salter (Salter) was shot in a Best Buy parking lot in Myrtle Beach, South Carolina. Salter later died from his injuries. Niles, his fiancé Mokeia Hammond (Hammond), and Ervin Moore (Moore) were arrested and charged with murder, armed robbery, and possession of a firearm during the commission of a violent crime. Moore entered into a plea agreement with the State whereby Moore pled guilty to armed robbery, voluntary manslaughter, and possession of a firearm during the commission of a violent crime in exchange for his testimony against Niles and Hammond. Niles and Hammond were tried jointly on March 9, 2009.

At Niles' and Hammond's trial, Moore testified that on April 9, 2007, Niles and Hammond picked up Moore and headed to the beach where the trio "made a couple of drug sales at a couple of motels." Moore stated, "[W]e were smoking blunts in the car . . . [and when] we ran out of weed . . . we said we wanted to get some more weed." Moore maintained Niles "made a couple of phone calls," and they "ended up in the Best Buy parking lot." Moore testified Niles said "he was going to do a lick," which Moore understood to mean they were going to rob the drug dealer, later identified as Salter. Moore stated his job in the robbery was "to identify the weed" for Niles.

Upon arriving at the Best Buy parking lot, Moore exited his vehicle and got into Salter's vehicle. Moore stated Salter pulled a large ziploc bag of marijuana out from under his seat so Moore could see it. Moore maintained that by the time he inspected the marijuana, exited Salter's vehicle, and returned to the vehicle with Hammond, Niles had exited their vehicle. Moore testified he informed Niles that he saw the marijuana and stated, "The next thing I knew, I just heard two shots and I seen [Niles], he jumped back in the back seat behind [Hammond]." Moore further stated "after . . . [Niles] jumped in [the vehicle], after them two shots then the other guy fired

---

1. Niles did not appeal his convictions for armed robbery and possession of a firearm during the commission of a violent crime.

a shot." Moore testified that after both Niles and Salter continued to fire shots at each other, Hammond drove out of the parking lot. Though Moore testified on direct examination "the other guy didn't shoot until after [Niles] shot," on cross-examination, Moore admitted he did not actually see Niles shoot first. Moore stated he originally testified Niles shot first because Niles admitted he shot first when Niles jumped back into the vehicle.

Niles testified in his own defense. He denied he told Moore he was "going to do a lick" and testified Moore asked him to purchase a pound of marijuana for him. Niles affirmed that when they pulled into the Best Buy parking lot, Moore got out of the vehicle and into Salter's vehicle. Niles testified he was talking to Hammond about their upcoming wedding when Hammond suddenly told him, "Baby, they are fighting." Niles stated he looked over to Salter's vehicle and observed Moore and Salter "tussling in the car." Niles stated he noticed Moore trying to exit Salter's vehicle and heard Salter state to Moore, "[Y]ou ain't getting out of this car with my weed without no money." Niles maintained that when Moore exited Salter's vehicle and jumped into the vehicle with Niles and Hammond, Salter pulled out a gun and began shooting at the vehicle that Niles, Hammond, and Moore occupied. Niles testified, "I grabbed my pistol and that's when I shot two times." Niles maintained he was being shot at constantly by Salter and he shot back.

The circuit court charged the jury on self-defense, but it refused Niles' request to charge the jury on voluntary manslaughter. The circuit court refused the voluntary manslaughter charge reasoning that "either the victim started shooting and Mr. Niles was acting in self-defense or Mr. Niles started shooting ... [and] killed the victim during the commission of an armed robbery."

Niles was convicted of murder, armed robbery, and possession of a firearm during the commission of a violent crime.[2] Niles received a thirty-year sentence for murder and armed robbery and a five-year sentence for the conviction of posses-

---

2. While Niles was convicted of all charges, Hammond was only convicted of armed robbery and sentenced to fifteen years' imprisonment.

sion of a firearm during the commission of a violent crime, all to be served concurrently. Niles appeals.

## STANDARD OF REVIEW

"In criminal cases, the appellate court sits to review errors of law only." *State v. Baccus*, 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006). Thus, an appellate court is bound by the circuit court's factual findings unless they are clearly erroneous. *Id.* If any evidence supports a jury charge, the circuit court should grant the request. *State v. Brown*, 362 S.C. 258, 262, 607 S.E.2d 93, 95 (Ct.App.2004). To warrant reversal, a circuit court's refusal to give a requested jury charge must be both erroneous and prejudicial to the defendant. *Id.*

## LAW/ANALYSIS

Niles argues the circuit court erred in failing to charge the jury on voluntary manslaughter because conflicting testimony was presented to support a jury charge on voluntary manslaughter.

To the contrary, the State asserts a jury charge of voluntary manslaughter was not appropriate in this case. The State argues only two scenarios are possible from the evidence presented at trial: (1) Salter shot first, and Niles acted in self-defense by returning fire; or (2) Niles shot at Salter first, committing murder during the commission of an armed robbery. The State contends that Niles failed to present evidence showing legal provocation or sudden heat of passion, which are both prerequisites to support a charge on voluntary manslaughter. We agree with Niles.

"The evidence presented at trial determines the law to be charged to the jury." *State v. Hernandez*, 386 S.C. 655, 660, 690 S.E.2d 582, 585 (Ct.App.2010). "To warrant a court's eliminating the offense of [voluntary] manslaughter, it should very clearly appear that there is *no evidence whatsoever* tending to reduce the crime from murder to [voluntary] manslaughter." *State v. Cole*, 338 S.C. 97, 101, 525 S.E.2d 511, 513 (2000) (emphasis added). In determining whether the evidence requires a charge of voluntary manslaughter, the circuit court views facts in a light most favorable to the defendant. *State v. Byrd*, 323 S.C. 319, 321, 474 S.E.2d 430, 431 (1996).

■ "Voluntary manslaughter is the unlawful killing of a human being in [a] sudden heat of passion upon sufficient legal provocation." *State v. Wharton*, 381 S.C. 209, 214, 672 S.E.2d 786, 788 (2009). Both sufficient legal provocation and heat of passion must be present at the time of the killing to support a jury instruction on voluntary manslaughter. *Hernandez*, 386 S.C. at 660, 690 S.E.2d at 585.

■ Furthermore, a court is permitted to charge a jury on both voluntary manslaughter and self-defense if supported by the evidence. In *State v. Gilliam*, 296 S.C. 395, 396–97, 373 S.E.2d 596, 597 (1988), our supreme court held a jury charge on self-defense and voluntary manslaughter are not mutually exclusive, stating:

> Both self-defense and the lesser included offense of voluntary manslaughter should be submitted to the jury if supported by the evidence. The rationale for this rule is that the jury may fail to find all the elements of self-defense but could find sufficient legal provocation and heat of passion to conclude the defendant was guilty of voluntary manslaughter.

(internal citation omitted).

■ Here, we find Niles' testimony that Salter fired the first shot at him, and he subsequently returned fire provides sufficient evidence to support a jury charge on voluntary manslaughter. Viewing the evidence in a light most favorable to Niles, we believe a jury could find Niles acted in a heat of passion upon sufficient legal provocation, thus supporting a voluntary manslaughter jury charge.

## I. Legal Provocation

■ First, we find there is evidence, albeit conflicting, that Salter sufficiently provoked Niles.

An unprovoked attack with a deadly weapon or an overt threatening act can constitute sufficient legal provocation to support a jury charge on voluntary manslaughter. *State v. Starnes*, 388 S.C. 590, 597–98, 698 S.E.2d 604, 608 (2010). In *Gilliam*, our supreme court found adequate legal provocation to support a jury charge on voluntary manslaughter from the defendant's testimony that the victim made threatening state-

ments to the defendant, drew a gun, and shot at the defendant. *Gilliam*, 296 S.C. at 396–97, 373 S.E.2d at 597. Further, in *State v. Linder*, 276 S.C. 304, 306–07, 278 S.E.2d 335, 337 (1981), our supreme court held the evidence supported a jury charge on voluntary manslaughter when, under the defendant's version of the facts, a patrolman began shooting at the defendant before the defendant reached for his weapon, returned fire, and killed the patrolman.

Here, Niles testified:

[W]hen [Moore] was getting out of the car and Salter was reaching underneath his seat I seen him pulling the gun and that's when he start[ed] firing off as [Moore] was jumping in the back seat and when he pulled the door to that's when ... [Salter] was shooting in the car. That's when my fiancé started screaming. [Hammond] ducked in my lap. She was screaming. So, while [Salter] was shooting in the car ... I grabbed my pistol and that's when I shot two times.

We find Niles' testimony provided evidence that he shot Salter after Salter pulled a gun and began shooting at Niles. Accordingly, viewing the evidence in a light most favorable to Niles, we find his version of the facts provided sufficient legal provocation to support a jury charge on voluntary manslaughter. *See State v. Pittman*, 373 S.C. 527, 573, 647 S.E.2d 144, 168 (2008) ("This court has previously held that an overt, threatening act or a physical encounter may constitute sufficient legal provocation."); *see also State v. Gadsden*, 314 S.C. 229, 233, 442 S.E.2d 594, 597 (1994) ("In determining whether the evidence required a charge of voluntary manslaughter, we view the facts in a light most favorable to the defendant.").

## II.  Heat of passion

Second, we find evidence was presented at trial to show Niles acted in a heat of passion when he shot Salter.

To mitigate murder to voluntary manslaughter, sudden heat of passion, while it need not dethrone reason entirely, must be such that would "naturally disturb the sway of reason, and render the mind of an ordinary person incapable of cool reflection, and produce what, according to human experience, may be called an uncontrollable impulse to do violence." *State v. Lowry*, 315 S.C. 396, 399, 434 S.E.2d 272,

274 (1993) (internal quotation marks and citation omitted). "However, even when a person's passion is sufficiently aroused by a legally adequate provocation, if at the time of the killing those passions had cooled or a sufficiently reasonable time had elapsed so that the passions of the ordinary person would have cooled, the killing would be murder and not manslaughter." *Hernandez*, 386 S.C. at 661, 690 S.E.2d at 585 (internal quotation marks and citation omitted). "Whether an accused cooled off prior to a violent act must be determined by a review of all the circumstances surrounding the event and the people involved." *Id.*

Niles testified that after Salter began shooting at his vehicle, Niles reached for his gun and returned fire. He stated:

> So, while he was shooting in the car . . . I grabbed my pistol and that's when I shot two times. My eyes were closed. I wasn't even looking. I shot two times. I went pow, pow. I wasn't trying to hit nobody . . . I was just trying to get him to stop shooting. That's all I was trying to do. I didn't know if my fiancé got shot or nothing. That's the first thing that came to my head, you know.

From Niles' testimony, we find there is evidence Niles acted in a sudden heat of passion. Looking at the totality of the circumstances, there is no evidence Niles had a period of time to cool down or reflect before reaching for his gun and firing back at Salter. *See State v. Knoten*, 347 S.C. 296, 307–09, 555 S.E.2d 391, 397–98 (2001) (holding it is error to refuse a jury charge on voluntary manslaughter when in viewing the evidence in the light most favorable to the defendant, there is no evidence that a significant period of time elapsed between the attack of the defendant by the decedent and the defendant's fatal blows). Further, Niles' testimony that grabbing the gun and returning fire was the "the first thing that came to . . . [his] mind" supports that he was acting on impulse upon being shot at by Salter. *See Starnes*, 388 S.C. at 598, 698 S.E.2d at 609 (holding to constitute sudden heat of passion to warrant a jury charge of voluntary manslaughter, a defendant's fear immediately following an attack or threatening act must cause the defendant to lose control and create an uncontrollable impulse to do violence).

Accordingly, viewing the evidence in the light most favorable to Niles, we find evidence sufficient to support a charge on voluntary manslaughter; therefore, the circuit court erred in failing to charge the jury on voluntary manslaughter. *See State v. Burriss*, 334 S.C. 256, 262, 513 S.E.2d 104, 108 (1999) (holding that if there is any evidence to support a jury charge, the circuit court should grant the request).

### III. Prejudice

■■■■ Furthermore, the error of the circuit court in failing to charge the jury with voluntary manslaughter prejudiced Niles. "The [circuit] court commits reversible error if it fails to give a requested charge on an issue raised by the evidence." *State v. Harrison*, 343 S.C. 165, 173, 539 S.E.2d 71, 75 (Ct.App.2000). However, even if the circuit court "refuses to give a specific charge, there is no error if the charge actually given sufficiently covers the substance of the request." *State v. Brandt*, 393 S.C. 526, 549, 713 S.E.2d 591, 603 (2011) (internal citation omitted). The party complaining of the circuit court's refusal to give the requested instruction bears the burden of demonstrating prejudice to warrant a reversal. *Otis Elevator, Inc. v. Hardin Const. Co. Group, Inc.*, 316 S.C. 292, 299, 450 S.E.2d 41, 45 (1994).

We find Niles met his burden of showing he was prejudiced by the circuit court's refusal to give the requested jury instruction. Here, the circuit court failed to give any instruction on voluntary manslaughter. The jury charges the circuit court gave regarding self-defense, murder, armed robbery, and possession of a firearm during the commission of a violent crime do not cover the substance of voluntary manslaughter, nor do they explain the elements of voluntary manslaughter. Based on the evidence presented at trial, viewed in a light most favorable to the defendant, a jury could have found Niles guilty of voluntary manslaughter. *See Harrison*, 343 S.C. at 175, 539 S.E.2d at 76 (holding defendant was prejudiced when based on the evidence at trial, a different verdict might have been reached if the jury had been charged with the instruction requested by the defendant). Therefore, Niles was prejudiced by the circuit court's failure to instruct the jury on voluntary manslaughter. *See id.*, 343 S.C. at 173, 539 S.E.2d at 75 ("To

538

warrant reversal, a [circuit court's] refusal to give a requested jury charge must be both erroneous and prejudicial.").

## CONCLUSION

Based on the foregoing, we find the circuit court erred in refusing to charge the jury on voluntary manslaughter, and thus, we **REVERSE** Niles' conviction for murder and remand for a new trial.

Accordingly, the circuit court's decision is

**REVERSED AND REMANDED.**

THOMAS and LOCKEMY, JJ., concur.