Ryan MONTAGUE, Appellee,

v.

CITY OF CEDAR RAPIDS, Iowa, Appellant.

No. 88–846.

Court of Appeals of Iowa.

Oct. 5, 1989.

James H. Flitz and David F. McGuire, Cedar Rapids, for defendant-appellant.

Richard Schrodermier, Cedar Rapids, for plaintiff-appellee.

Heard by OXBERGER, C.J., and SCHLEGEL and HABHAB, JJ., but considered en banc.

DONIELSON, Judge.

The defendant, City of Cedar Rapids (City), appeals a ruling by the trial court granting the plaintiff a certificate of occupancy allowing him to operate an adult bookstore in downtown Cedar Rapids. The City contends that the trial court erred by finding that the location is not within 450 feet of a school or residential zoning district. Upon our de novo review of this equitable proceeding, *see* Iowa Code section 661.3 (1987), we reverse.

Plaintiff Ryan Montague filed a petition for a writ of mandamus ordering the City of Cedar Rapids to issue a certificate of occupancy allowing him to operate an adult bookstore at a certain downtown location.[1] After finding that the location was not within 450 feet of a school or residential zoning district within the meaning of a city ordinance, the trial court ruled that Montague was entitled to the certificate he sought. The City has appealed.

*Residential District*

■ The City's appeal focuses on the separation requirements of city ordinance 29–84, which states that no adult bookstore "shall be located within 450 feet of any school, church, or residential zoning district, as defined in this chapter." The City argues that Geneva Tower's residential use of its facility makes it a "residential district" for purposes of this ordinance, and therefore Montague cannot establish an Adult Entertainment Establishment within 450 feet of Geneva Tower. The ordinance in question does prohibit the location of an Adult Entertainment Establishment within 450 feet of a residential zoning district. Cedar Rapids, Iowa, Mun.Code ch. 32.-11(d)(3)(B)(2). A residential zoning district is "[a]ny district identified as a residential district in section 32.06(a)." Cedar Rapids, Iowa, Mun.Code ch. 32.04(b)(40B). Section 32.06(a) sets forth various classifications of districts including agriculture and residential districts, commercial districts, industrial districts and special districts. There appear to be nine types of residential districts that are set forth in the ordinance.[2]

There is no question but that Geneva Tower is located in a district zoned C–5 (central business district). While apartment hotels such as the Geneva Tower are a permitted use within a C–5 district, Cedar Rapids, Iowa Mun.Code ch. 32.08(f)(2)(A4), the fact that the Geneva Tower is a resi-

---

1. The proposed location is zoned C–4 (central service district) which is an appropriate location for an Adult Entertainment Establishment subject to the separation requirements set forth in the Cedar Rapids Municipal Code.

2. Agriculture and Residence Districts:

| | |
|---|---|
| A | Agriculture District |
| R–1 | Single Family Residence District |
| R–2 | Single Family Residence District |
| R–3 | Single Family Residence District |
| R–3D | Two Family Residence District |
| R–4 | Multiple Family Residence District |
| R–5 | Multiple Family Residence District |
| R–6 | Multiple Family Residence District |
| R–7 | Multiple Family Residence District |
| R–MH | Mobile Home Park Residence District |

Cedar Rapids, Iowa, Mun.Code Ch. 32.06(a)(1).

dence for many people does not make it a residential district within a commercial district. Nothing in the city ordinance, or in the arguments offered by the City, can explain how a residence which is a permitted use within a commercial district will transform that structure into an entirely separate residential district. Our interpretation of the ordinance will not support this view, nor do we believe that such a result was the legislative intent of the city council. The ordinance prohibits Adult Entertainment Establishments within 450 feet of any school, church, or residential zoning district. The council intended to insulate individual schools and churches from the deleterious effects of these adult establishments. It did not choose, however, to specifically protect individual residences. Instead, the council prohibited the location of these establishments within 450 feet of residential zoning districts. The council is assumed to know that its zoning scheme allows the placement of residences in districts that are not zoned residential. Yet, it chose to limit its protection to districts zoned residential and not to all residences wherever located. Those who choose to reside in nonresidential districts cannot expect all of the amenities and advantages that one procures when one chooses to live in a residential district. The trial court did not err in determining that Montague's business was not located within 450 feet of a residential zoning district.

*Schools*

The City contends that the trial court erred by failing to find that there are three schools situated within 450 feet of the proposed bookstore location.

The ordinance defines a "school" as:

Any building or part thereof which is designed or used for presenting formalized courses or curriculum for educational purposes.

Cedar Rapids, Iowa, Municipal Code chapter 32.04(b)(41A). The City contends that because the proposed site is within 450 feet of three buildings known locally as: (1) Sokol Gymnasium, (2) the Iowa Building,[3] and (3) Geneva Tower, and all three institu-

tions use their buildings to present educational courses, they are "schools" within the meaning of the ordinance and Montague should not be allowed to operate his bookstore within 450 feet thereof.

█ This court agrees with the trial court's conclusion that Geneva Tower is not a "school" within the definition of the ordinance. While the weekly church service may offer its residents some religious instruction, this does not render the facility to be a place at which formalized courses or curriculum are presented for educational purposes. The City's reliance on this argument will not suffice to deny issuance of an occupancy permit to Montague.

█ However, this court does conclude that both Sokol Gymnasium and the Iowa Building constitute schools for purposes of this ordinance. In determining if a structure, or part of a structure, is a "school" for purposes of this ordinance, the use of the building, not the type of the building, is determinative. *Schueller v. Bd. of Adj. of City of Dubuque,* 250 Iowa 706, 709–10, 95 N.W.2d 731, 734 (1959). In arriving at its conclusion that these facilities are not schools, the trial court focused too narrowly on that portion of the ordinance which stated that it was the intent of the city council in enacting this ordinance to severely limit the location of Adult Entertainment Establishments in areas where minors would be expected to live or congregate. The full text of the council's general statement of intent is set forth as follows:

*General Statement of Intent:* Adult Entertainment Establishments because of their special characteristics are recognized as having potential deleterious impacts on surrounding establishments and areas, thereby contributing to creation of blight and to the decline of neighborhoods. These negative impacts appear to increase significantly if several Adult Entertainment Establishments concentrate in any one area.

Recognized also is the need to protect lawful rights of expression and use of

---

**3.** The Iowa Building is also known as the Century Engineering Building.

property and to not unduly restrain general public access.

Therefore, it is the intent of these regulations to prevent the concentrations of Adult Entertainment Establishments in all areas, to more severely limit their locations in areas where minors would be expected to live or congregate, and to otherwise regulate their locations in order to protect and preserve the welfare of the community. It is the intent also to provide for sufficient locations for such establishments to protect basic legal rights of expression and public access. These regulations have been enacted with full consideration of the legal and constitutional issues heretofore adjudicated.

Cedar Rapids, Iowa, Mun.Code ch. 32.-11(d)(1).

A review of this statement of intent, reveals that in limiting the location of these Adult Entertainment Establishments, the council not only intended to protect minors, but to protect and preserve the welfare of the community as well. Both of these purposes must be considered when this ordinance is applied to the case at hand.

The Iowa Building houses classes which are administered by Kirkwood Community College. The courses taught at the Iowa Building include both credit and noncredit courses. This facility clearly falls within the definition of a school set forth in the ordinance. Part of the Iowa Building is used for "presenting formalized courses of curriculum for educational purposes." Contrary to the view of the trial court, nothing in the statutory definition of school suggests that it is limited to elementary or secondary schools. *See Livingston v. Davis*, 243 Iowa 21, 50 N.W.2d 592 (1951) (Iowa Supreme Court construed the term "school" in a zoning ordinance to include a private preschool or nursery). The community education, post-secondary, and vo-tech nature of the courses taught at the Iowa Building do not render it to be any less a "school" within the context of this ordinance. Nor does the generally adult-aged student population of Kirkwood prevent this facility from being a school. The trial court focused solely on the statutory intent to protect minors. However, the statement of intent adopted by the Cedar Rapids City Council indicated an intention to "protect and preserve the welfare of the community." The inherently incompatible nature of Adult Entertainment Establishments and educational institutions supports a construction of the term "school" to encompass Kirkwood's programs offered at the Iowa Building. The presence of the Iowa Building within 450 feet of the property in question renders it unlawful for Montague to operate an Adult Entertainment Establishment at that location.

Sokol Gymnasium is also a "school" for purposes of this statute. Sokol has provided physical education and gymnastics training at its present location since 1908. At the time of the trial court's hearing on this matter, Sokol had approximately 100 child and adult students. Classes are organized progressively by age and ability. This court cannot agree with the trial court's conclusion that athletic and physical training cannot constitute an educational purpose within the meaning of the ordinance. The trial court recognizes a strict dichotomy between recreational and educational purposes and appears to believe that the two cannot converge. Sokol Gymnasium is not merely a facility where one may enter and work out at his or her pleasure. Sokol Gymnasium offers a specific class structure and formalized curriculum in which its students are instructed on how to develop their prowess and gymnastic skills. Sokol Gymnasium's class structure and instruction instills discipline in its students and provides them with continuing physical education. This court finds no basis for concluding that the definition of "school" set out in the ordinance does not encompass Sokol Gymnasium. Numerous children gather at Sokol Gymnasium for progressive physical education courses. The statement of intent indicates that the city council intended to restrict the location of Adult Entertainment Establishments in areas where *minors would be expected to congregate*. This intent further supports our determination that Sokol Gymnasium is a "school" within the meaning of the ordi-

nance, and Montague's establishment cannot be located within 450 feet of this facility. The decision of the trial court is reversed.

 This court is not unaware of the first amendment implications of this matter. While the facts of this case prohibit the location of Montague's business at the desired location, we conclude that neither the ordinance at question, nor this court's interpretation of it, forecloses the availability of reasonable alternative avenues of communication for businesses of this nature. *See Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986).

REVERSED.

All Judges concur except SCHLEGEL and HABHAB, JJ., who dissent.

SCHLEGEL, Judge (dissenting).

I respectfully dissent.

The Sokol Gymnasium and the Iowa Building are not schools within the meaning of the ordinance. Disapproval of the adult entertainment establishments cannot be a basis for construing a statute in contravention of legislative intent and the plain meaning of the ordinance.

I would affirm.

HABHAB, J., joins this dissent.