ST. AMBROSE UNIVERSITY, An Iowa
Nonprofit Corporation, Appellant,

v.

The BOARD OF REVIEW FOR the CITY
OF DAVENPORT and Robert Sieren,
Joseph Bush, Ralph C. West, and Ken-
neth Johnston, As Members of Said
Board of Review, Appellees.

No. 92–1033.

Supreme Court of Iowa.

July 21, 1993.

Steven T. Hunter, Davenport, for appel-
lant.

John R. Martin, Davenport, for appellees.

CARTER, Justice.

The appellant, St. Ambrose University,
appeals from an order of the district court
in a proceeding under Iowa Code section
441.39 (1991). The order being challenged
determined that a property used as a resi-
dence for the University's vice president of
ministry as well as for other purposes of
the college was not exempt from the gener-
al property tax. In the same proceeding,
the court determined that property owned
by the University and utilized for a univer-
sity-operated child care facility was exempt
from the general property tax. The Board
of Review has appealed from that portion
of the order. After considering the argu-
ments presented, we affirm on the appeal
of the Board of Review and reverse on the
appeal of the University.

Appellant, St. Ambrose University, is a
nonprofit corporation organized and exist-
ing under Iowa Code chapter 504A. Its
stated objects and powers are to operate
exclusively for charitable, scientific, reli-
gious, and educational purposes as defined
in section 501(c)(3) of the Internal Revenue
Code of 1986. St. Ambrose is affiliated
with the Diocese of Davenport of the Ro-
man Catholic Church. The Bishop of the
Diocese of Davenport is President of St.
Ambrose.

On January 3, 1990, St. Ambrose ac-
quired a piece of property located immedi-
ately to the east of its original campus at
2119 Scott Street in Davenport. This was
subsequently converted from a private resi-
dence into a fully licensed child care center.
Property surrounding this parcel has also
been acquired by St. Ambrose and is now
being used for college-related activities.

The stated purpose of the child care facil-
ity is to promote enrollment and attendance
by single parents or parents of preschool-
aged children within St. Ambrose's classes
and educational programs and to accommo-
date St. Ambrose employees. Enrollment
is limited to twenty children. Priority of
admission is given to the children of St.

Ambrose students, then to children of St. Ambrose employees. Any remaining vacancies are open to the general public. The child care center is operated on a not-for-profit basis; fees are set at a less than break-even level.

## I. *The Board of Review's Appeal.*

We first consider the appeal of the Board of Review relating to the child care facility. The district court found a sufficient nexus between the purposes of the University and a child care facility being operated primarily for University students and personnel to render the property exempt from taxation. In reviewing the correctness of that determination, we begin with Iowa Code section 427.1(9) (1991), which provides an exemption for:

> All grounds and buildings used or under construction by literary, scientific, charitable, benevolent, agricultural, and religious institutions and societies solely for their appropriate objects, not exceeding three hundred twenty acres in extent and not leased or otherwise used or under construction with a view to pecuniary profit.

The requirements of section 427.1(9) were reviewed in *Congregation B'Nai Jeshurun v. Board of Review*, 301 N.W.2d 755 (Iowa 1981). We stated in that case:

> Our statute is quite tightly drawn. It contains three requirements. First, the property must be "used ... by [literary, scientific, charitable, benevolent, agricultural, and] religious institutions and societies." ... The second requirement ... narrows the kind of use which qualifies property for exemption: the use by religious [and other listed types of] institutions and societies must be "*solely* for their appropriate *objects.*" (Emphasis added.) Third, the property must not be used or leased "with a view to pecuniary profit."

*Id.* at 756 (quoting Iowa Code § 427.1(9) (1979)). The first and third requirements stated in *Congregation B'Nai Jeshurun* are not disputed by the Board of Review. As to the second requirement, however, the Board urges that the facility is not being used solely for the appropriate objects of the college because a few children are allowed to attend whose parents are not students or employees of the school.

The application of this second or "actual use" requirement was initially considered more than 100 years ago. In *Trustees of Griswold College v. State*, 46 Iowa 275, 282 (1877), the statutory language, "devoted solely to the appropriate objects of [the qualifying institutions,]" was not the same as the actual necessities of the institution. This court interpreted this language to mean that "[t]he true inquiry should be not what is actually necessary, but what is proper and appropriate to effectuate the objects of the institutions."

If given a literal reading, the "solely for their appropriate objects" test espoused in *Congregation B'Nai Jeshurun* and the "what is proper and appropriate to effectuate the objects of the institutions" test espoused in *Griswold College* would appear to be in conflict. However hard it may be to completely reconcile these statements of principle, we believe that certain guideposts may be discerned. Among these is our belief that a more demanding "actual use" test is imposed in those situations in which the challenged use is the primary basis for the claim of exemption. In contrast, the phrase "solely for their appropriate objects" is a much less demanding requirement for those religious, educational, and charitable organizations who clearly qualify as such without regard to the use of the property at issue. This is because the very reason for the existence of those institutions is to carry on charitable, educational, and religious activities. Consequently, the use of their property for an activity within their mission will ordinarily be consistent with exempt status. The *Congregation B'Nai Jeshurun* case qualifies this conclusion with respect to uses that are only shown to generally benefit the institution and that do not foster a specific program within the mission of the institution.

■ St. Ambrose University is clearly both an educational and a religious organization without regard to its use of the

property at which the day-care facility is housed. The day-care activities are for the direct benefit of students and faculty and facilitate their respective educational goals. The district court found:

> [The child care facility's] primary operation is to benefit students who otherwise might not be able to attend the University and its primary use is actually for such purpose. Obviously providing an employment benefit to its employees also is for an educational purpose.

The court found that any use of the facility by other persons was incidental to the purpose for which the University owned the facility.

On our de novo review in this equity action, we conclude that the district court's findings on the evidentiary issues accurately reflect the importance of the child care facility to the purposes of the University. We conclude that these findings qualify the property as exempt under section 427.1(9). We affirm the order of the district court on the Board of Review's appeal.

## II. The University's Appeal.

The property involved in the University's appeal is occupied by Father Shafer, a Roman Catholic priest who serves as Vice President of University Ministry for St. Ambrose. He is provided rent-free housing in connection with that position. The facility also serves as Father Shafer's office, a conference center, and as a location for providing counseling to students. In finding that this property was not exempt from the general property tax, the court stated:

> The Court believes that the fact that it is the residence of the vice-president is sufficient in and of itself to deny the exemption, unless there be proof that it was essential that he live there in order to carry out the programs of the University. There is no such showing here.... Under these circumstances, the residential use of the property is not for an educational purpose.

The point of beginning in our consideration of this issue is the *Griswold College* decision. The facts of that case involved two homes on a denominational college campus. One home was occupied by a bishop who was the college president and was ordained. The other home was occupied by one of the professors at the college who was not a clergyman. This court held both homes exempt. The basis for the holding on the bishop's housing was the religious exemption now contained in section 421.1(9). The basis of the exemption on the faculty member's housing was the educational exemption now contained in that statute. In reaching this result, this court stated:

> [T]he actual necessities of the institutions is not the rule prescribed by the statute. If it were, the building owned by the college and used as a boarding house for students, and possibly as the residence of the keeper of it, would not be exempt, because the keeping of a boarding house is a secular use and it is not necessary that the students should board in a building owned by the college corporation....

*Griswold College,* 46 Iowa at 281.

The *Griswold College* case has never been overturned and was reaffirmed in *Trinity Lutheran Church v. Browner,* 255 Iowa 197, 121 N.W.2d 131 (1963). In the *Congregation B'Nai Jeshurun* decision, we held that housing maintained by a church to facilitate the availability of a full-time maintenance worker was not exempt. 301 N.W.2d at 759. In so doing, however, we stated: "By so holding we do not now indicate any opinion as to the property tax incidents of housing for nonecclesiastical personnel within a religious edifice or of housing for ecclesiastics." *Id.*

■ The present case does involve housing for an ecclesiastic and, in addition, the property is used for the educational purposes of a religious college. Although it is not located on the central campus of the University, it is common knowledge that university campuses are not always centralized. In sum, we conclude that the decision that the district court reached contravenes the decisions in the *Griswold College* and *Trinity Lutheran Church* cases and the principles that we have discussed in Division I of this opinion.

We reverse the judgment of the district court on the University's appeal and remand the case to that court for an order pursuant to Iowa Code section 441.39 decreeing that the property is exempt.

**REVERSED ON PROPERTY OWNER'S APPEAL; AFFIRMED ON BOARD OF REVIEW'S CROSS–APPEAL.**