# IN THE SUPREME COURT OF IOWA

No. 18–1119

Filed December 6, 2019

**STATE OF IOWA,**

Appellee,

vs.

**JAMES L. MATHIAS,**

Appellant.

---

Appeal from the Iowa District Court for Scott County, Nancy S. Tabor (motion to suppress) and Henry W. Latham II (sentencing), Judges.

A defendant appeals his conviction for carrying a firearm on the grounds of a school in violation of Iowa Code section 724.4B (2018). **AFFIRMED.**

Mark C. Smith, State Appellate Defender (until withdrawal), and Ashley Stewart, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Linda J. Hines, Assistant Attorney General, Michael Walton, County Attorney, and Caleb J. Copley, Assistant County Attorney, for appellee.

**WIGGINS, Chief Justice.**

A defendant appeals his conviction for carrying a firearm on the grounds of a school in violation of Iowa Code section 724.4B (2018). He claims there was insufficient evidence to support the conviction because a school district-owned athletic complex that is not contiguous to a school building with classrooms does not qualify as the grounds of a school. He also claims that the district court erred in giving the jury an instruction defining "grounds of a school." On appeal, we find a school district-owned athletic complex that is not contiguous to a classroom building does qualify as grounds of a school under section 724.4B. We also find the jury instruction was proper. Accordingly, we affirm the defendant's conviction.

## I. Background Facts and Proceedings.

On September 22, 2017, Davenport North High School and Davenport Central High School played a football game in the stadium at the Brady Street Athletic Complex (the Complex) in Davenport. The Davenport Community School District owns and operates the Complex. Davenport Central's outdoor facilities are all located at the Complex, and it uses the Complex for various school athletic events, including football, baseball, soccer, and track. Private schools, such as Davenport Assumption High School and St. Ambrose University, and nonschool entities also use the Complex.

The Complex is located on the southeast corner of East 36th Street and North Brady Street in Davenport. Brady Street runs north/south, and 36th Street runs east/west. Although no traditional schoolhouse buildings are located at the Complex, the Davenport School District Athletic Director and a Davenport police officer, who is the police liaison to the Davenport public school system, testified that the Complex was

treated the same as a schoolhouse building for purposes of a person possessing a firearm.

On the southwest corner of the Complex, right off of Brady Street, is a digital sign surrounded by a brick structure. Above the digital sign are the words "Brady Street Athletic Complex," and below the digital sign are the words "Davenport Community Schools." The stadium itself has multiple signs that say "Davenport Community Schools," at least some of which are visible from the parking lots.

There are two parking lots adjacent to the stadium and accessible from Brady Street: one immediately west of the stadium and east of Brady Street and one to the south of the stadium. People attending events at the stadium use both parking lots. On the evening of September 22, the south parking lot was full of cars.

That evening, Davenport Police Captain Jamie Brown was in uniform but working security in an off-duty capacity at the football game. Around 9:00 p.m., an unidentified person informed him that a man was placing flyers on cars in the parking lot. Brown located James Mathias in the south parking lot, close to Brady Street, placing flyers on cars.

Brown asked Mathias what he was doing, to which Mathias responded, "[F]reedom of speech." Brown noted that Mathias "[s]eemed to be kind of agitated or annoyed that [he] was there," so he then asked to see Mathias's identification. As Mathias was reaching back to retrieve his I.D. from his pocket, his shirt rose up and Brown saw a bulge on the side of Mathias's waist. He asked Mathias if he had a firearm. Mathias answered yes but said he had a permit, which he handed to Brown along with his I.D. Brown again asked Mathias why he was there, and Mathias repeated, "[F]reedom of speech."

Brown did not arrest Mathias at that point. He thought he should first get Mathias off the property because of his demeanor coupled with the fact that he had a firearm. After Mathias was off the property, Brown would then deal with the legal matters. Brown also wanted to make sure that the law prohibiting the carrying of a firearm on the grounds of a school applied to the Complex. Brown told Mathias that he needed to leave. Mathias walked away from the Complex and did not return.

In the following weeks, Brown spoke with the Scott County Attorney's Office about the incident. On February 19, 2018, the State charged Mathias with carrying a firearm on the grounds of a school in violation of Iowa Code section 724.4B.

Mathias pled not guilty, and the case proceeded to a jury trial. At the close of the State's case and again at the close of all the evidence, Mathias moved for judgment of acquittal. He argued there was insufficient evidence that the parking lot was the grounds of a school. The court denied the motion.

Before closing arguments, Mathias objected to Jury Instruction No. 18, which provided, "The phrase 'grounds of a school' may include recreational facilities, cultural facilities, or school buildings at which instruction is given." He objected to the definitional instruction "because there is no case law on it or there is no definition of that phrase provided in the statute." The court overruled the objection.

The jury found Mathias guilty, and he appealed. We retained the appeal.

## II. Scope and Standards of Review.

We review sufficiency-of-the-evidence claims for correction of errors at law. *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012). We will uphold the verdict if it is supported by substantial evidence. *Id.*; *see State v.*

*Truesdell*, 679 N.W.2d 611, 615 (Iowa 2004). "Evidence is substantial if, 'when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt.' " *State v. Wickes*, 910 N.W.2d 554, 563 (Iowa 2018) (quoting *State v. Ramirez*, 895 N.W.2d 884, 890 (Iowa 2017)).

"We review challenges to jury instructions for correction of errors at law." *State v. Albright*, 925 N.W.2d 144, 157 (Iowa 2019). We evaluate whether the instruction at issue "accurately states the law and whether substantial evidence supports it." *Id.* Even when the instruction is erroneous, we will not reverse unless prejudice resulted. *State v. Benson*, 919 N.W.2d 237, 241 (Iowa 2018). "Prejudice results when jury instructions mislead the jury or materially misstate the law." *Id.* at 241–42.

### III. Issues.

The issues we must address on appeal are (1) whether the district court erred in denying Mathias's motion for judgment of acquittal and (2) whether the district court properly instructed the jury that the grounds of a school may include recreational and cultural facilities.

### IV. Whether the District Court Erred in Denying Mathias's Motion for Judgment of Acquittal.

The Iowa Code provides in pertinent part,

> A person who goes armed with, carries, or transports a firearm of any kind, whether concealed or not, on the *grounds of a school* commits a class "D" felony. For the purposes of this section, "*school*" means a public or nonpublic school as defined in section 280.2.

Iowa Code § 724.4B(1) (first emphasis added). If the parking lot where Mathias was carrying a firearm is the grounds of a school, the district court correctly denied his motion for judgment of acquittal.

**A.  The Grounds of a School.**  Under the State's interpretation, the grounds of a school include property owned and used by a public or nonpublic school for school athletics and events.  Under Mathias's interpretation, the grounds of a school include only the classroom building and immediate surrounding land and do not include football stadiums and parking lots built on land that is not contiguous with the classroom building.  Thus, we must determine if a school district-owned sports complex that is not contiguous to classroom buildings qualifies as grounds of a school under Iowa Code section 724.4B.

"When interpreting a statute, we seek to ascertain the legislature's intent."  *State v. Lopez*, 907 N.W.2d 112, 116 (Iowa 2018) (quoting *Dakota, Minn. & E. R.R. v. Iowa Dist. Ct.*, 898 N.W.2d 127, 136 (Iowa 2017), *overruled on other grounds by TSB Holdings, L.L.C. v. Bd. of Adjustment*, 913 N.W.2d 1, 14 (Iowa 2018)).  We determine legislative intent from the words chosen by the legislature, not what it should or might have said.  *Ramirez-Trujillo v. Quality Egg, L.L.C.*, 878 N.W.2d 759, 770 (Iowa 2016).  We cannot allow legislative intent to change the meaning of a statute if the words used by the legislature will not allow for such a meaning.  *See Schadendorf v. Snap-On Tools Corp.*, 757 N.W.2d 330, 337 (Iowa 2008).

We begin with the text of the statute.  *Lopez*, 907 N.W.2d at 116.  If the legislature chooses to define the term in a statute, that definition ordinarily binds us.  *State v. Pettijohn*, 899 N.W.2d 1, 15 (Iowa 2017).  When the legislature does not define the term, we look to the context in which the term appears and give it its ordinary and common meaning.  *Id.* at 16; *accord* Iowa Code § 4.1(38); *State v. Bower*, 725 N.W.2d 435, 442 (Iowa 2006).

Then we determine if the statute is ambiguous.  *Lopez*, 907 N.W.2d at 116.  Ambiguity occurs "if reasonable minds could differ or be uncertain

as to the meaning of the statute." *City of Waterloo v. Bainbridge*, 749 N.W.2d 245, 248 (Iowa 2008). When the language is "plain, clear, and susceptible to only one meaning," we do not search for meaning beyond the particular terms. *Id.*; *see Lopez*, 907 N.W.2d at 117. If the language is ambiguous, however, we consider our tools of statutory construction. *See Lopez*, 907 N.W.2d at 117; *see also* Iowa Code § 4.6.

Here, the legislature chose not to define whether "grounds of a school" requires the grounds to be contiguous with the classroom building. Iowa Code § 724.4B(1). Nothing in the statute limits the grounds of a school to the land contiguous to a classroom building. *See, e.g., Jahnke v. Deere & Co.*, 912 N.W.2d 136, 143 (Iowa 2018) (" 'Statutory text may express legislative intent by omission as well as inclusion,' and we may not read language into the statute that is not evident from the language the legislature has chosen." (quoting *State v. Iowa Dist. Ct.*, 730 N.W.2d 677, 679 (Iowa 2007))). However, as "grounds" is not defined in the statute and does not have an established legal meaning, "we assign it its common, ordinary meaning in the context in which it is used." *Kline v. SouthGate Prop. Mgmt., LLC*, 895 N.W.2d 429, 438 (Iowa 2017). For purposes of statutory construction, "grounds" as used in section 724.4B also includes "ground." *See* Iowa Code § 4.1(17) ("Unless otherwise specifically provided by law the singular includes the plural, and the plural includes the singular."). The dictionary defines "ground" as including "LAND" or "an area appropriated to or used for a particular purpose." *Ground, Webster's Third New International Dictionary* (unabr. ed. 2002). It defines "grounds" as "the gardens, lawn, or planted areas immediately surrounding and belonging to a house or other building." *Id.*

Section 280.2 defines "public school" and "nonpublic school": "The term '*public school*' means any school directly supported in whole or in

part by taxation. The term '*nonpublic school*' means any other school which is accredited pursuant to section 256.11." Iowa Code § 280.2.

Putting all of that together reveals that "grounds of a school" could have multiple reasonable meanings. That phrase could reasonably mean the *land* of any school directly supported by taxation or accredited pursuant to section 256.11. *See Ground*, *Webster's Third New International Dictionary*. It could reasonably mean "an area appropriated to or used for a particular purpose" of any school directly supported by taxation or accredited pursuant to section 256.11. *Id.* Or it could reasonably mean "the gardens, lawn, or planted areas *immediately surrounding* and belonging to a . . . building" of any school directly funded by taxation or accredited pursuant to section 256.11. *Id.* (emphasis added). Thus, the phrase is ambiguous, *see Bainbridge*, 749 N.W.2d at 248, and we must resort to our tools of statutory construction, *see Lopez*, 907 N.W.2d at 117; *see also* Iowa Code § 4.6.

In determining the legislative intent of an ambiguous statute, we may consider matters such as the statute's object and legislative history, the circumstances surrounding its enactment, "former statutory provisions, including laws upon the same or similar subjects," and "[t]he consequences of a particular construction." Iowa Code § 4.6(1)–(5). We also consider "the overall structure and context of the statute, not just specific words or phrases in a vacuum." *Lopez*, 907 N.W.2d at 120; *accord Pettijohn*, 899 N.W.2d at 16.

The Iowa General Assembly enacted section 724.4B in 1995. 1995 Iowa Acts ch. 191, § 53. The language that would become section 724.4B was part of the original bill and did not change. *Compare id.*, *with* H.F. 528, 76th G.A., 1st Sess. § 47 (Iowa 1995) (as introduced Mar. 22, 1995). Regarding section 724.4B, the bill explanation states,

A new section is also added to chapter 724 making it a class "D" felony for going armed with, carrying, or transporting a firearm on the grounds of a public or nonpublic school. *Exemptions are provided for* peace and corrections officers, military personnel, *persons transporting firearms in closed and locked containers or inside the cargo or luggage compartments of motor vehicles*, law enforcement personnel from other states, and *persons specifically authorized by the school to have a firearm on the grounds of the school, including for instructional purposes.*

H.F. 528, 76th G.A., 1st Sess., explanation (as introduced Mar. 22, 1995) (emphasis added); *see* Iowa Code § 724.4B(2); *see also id.* § 724.4(4)(*f*).

The exemption for persons authorized to have a firearm on school grounds for instructional purposes implies the grounds of a school may extend beyond classroom buildings. *See, e.g.*, *Students at North Butler and Clarksville Schools Can Take Firearms Course in Spring*, RadioIowa (Dec. 13, 2018), https://www.radioiowa.com/2018/12/13/students-at-north-butler-and-clarksville-schools-can-take-firearms-course-in-spring/ [https://perma.cc/BL8P-3E58] (reporting that two rural Iowa schools adopted a firearms safety course, which would involve inoperable firearms with replica ammunition, as part of their physical education classes); *see also* Iowa Code § 483A.27(11) (providing that department of natural resources-certified hunting education courses or shooting sports activities that occur on "public school property" do not violate "any public policy, rule, regulation, resolution, or ordinance which prohibits the possession, display, or use of a firearm . . . on public school property"). Aspects of these activities cannot reasonably be done within a classroom building.

The exemption for persons transporting firearms in closed and locked containers or inside the cargo or luggage compartments of motor vehicles also implies that the grounds of a school extend beyond classroom buildings. Motor vehicles do not enter classroom buildings. Factually,

motor vehicles park in parking lots like the one where Mathias was carrying his gun.

The fiscal note for H.F. 528 characterizes the new language in two ways. In the heading, it says, "POSSESSION OF FIREARM ON SCHOOL *PREMISES*." H.F. 528, 76th G.A., 1st Sess., fiscal note (filed Mar. 27, 1995) (emphasis added). But in the text under that heading, it says, "The bill establishes a Class 'D' felony for going armed with, carrying, or transporting a firearm on the *grounds* of a public or nonpublic school. The bill provides for specified exemptions." *Id.* (emphasis added). By doing this, the fiscal note suggests that "grounds" as used in section 724.4B has the same meaning as the term "premises." We assume one of the reasons the legislature passed the bill is because of the fiscal statement, including its assumption. *See State v. Allen*, 708 N.W.2d 361, 367 (Iowa 2006).

Several other provisions of the session law also address firearms and schools. Two provisions address possession of firearms "on school premises" in violation of state law. 1995 Iowa Acts ch. 191, §§ 21, 22 (codified at Iowa Code §§ 280.17A, 280.17B). Section 21 of the session law requires school officials to report "any dangerous weapon, as defined in section 702.7, [which includes firearms], possessed *on school premises* in violation of school policy or state law." *Id.* § 21 (emphasis added); *see* Iowa Code § 702.7. Section 22 addresses a public or nonpublic school's "procedures for continued school involvement with a student who is suspended or expelled for possession of a dangerous weapon, as defined in section 702.7, *on school premises* in violation of state law." 1995 Iowa Acts ch. 191, § 22 (emphasis added).

A third provision addresses firearms brought to or knowingly possessed at "a school." *Id.* § 23 (codified at Iowa Code § 280.21B). Section 23 requires any school that is supported by federal funds to "expel

from school" for at least one year a student who "brought a weapon to a school or knowingly possessed a weapon at a school under the jurisdiction of the [school] board or the authorities [of a nonpublic school]." *Id.* "Weapon" as used in that section "means a firearm as defined in 18 U.S.C. § 921." *Id.* Section 23 implemented the Gun-Free Schools Act of 1994, now codified at 20 U.S.C. § 7961, wherein Congress requires each state receiving federal funds to have a law expelling for at least one year any student "who is determined to have brought a weapon to school." Gun-Free Schools Act of 1994, Pub. L. No. 103-227, § 1032, 108 Stat. 125, 270–71 (codified as amended at 20 U.S.C. § 7961 (2018)); *see* Kathleen M. Cerrone, Comment, *The Gun-Free Schools Act of 1994: Zero Tolerance Takes Aim at Procedural Due Process*, 20 Pace L. Rev. 131, 132–33, 133 n.10, 167 (1999); Jill Richards, Comment, *Zero Room for Zero Tolerance: Rethinking Federal Funding for Zero Tolerance Policies*, 30 U. Dayton L. Rev. 91, 100 & n.79 (2004); Gun-Free Schools, *BEDS (Basic Educational Data Survey)*, Iowa Dept. of Educ., https://www.edinfo.state.ia.us/ help/hlpB3G00.asp?b=B&s=3&c=G&d=0&p=0 (last visited Nov. 25, 2019) [https://perma.cc/8WF8-9HTX].

Reading these various session law provisions together reveals a lack of consistency in how the legislature refers to the geographical scope of a school. This inconsistency, like the fiscal note to H.F. 528, suggests the legislature intended the terms "school premises" and "grounds of a school" to be coextensive or at least synonymous.

Also instructive to our analysis is the history of section 724.4A. Section 724.4A provides a sentence enhancement for the commission of an offense involving a firearm within a "weapons free zone," which includes "the area in or on, or within one thousand feet of, the real property comprising a public or private elementary or secondary school." Iowa Code

§ 724.4A. Instead of "grounds" or "premises," it uses the term "real property," which is defined in section 4.1, unlike "grounds" and "premises." *See* Iowa Code § 4.1(13) ("*Land — real estate.* The word "*land*" and the phrases "*real estate*" and "*real property*" include lands, tenements, hereditaments, and all rights thereto and interests therein, equitable as well as legal."). Also unlike section 724.4B, section 724.4A specifies the particular school at issue—a "public or private elementary or secondary school"—and does not refer to section 280.2 for the definition of "school."

The legislature enacted section 724.4A in 1994, one year before it enacted section 724.4B. 1994 Iowa Acts ch. 1172, § 53. Presumptively, the legislature was aware of the terminology in section 724.4A when it enacted section 724.4B. Thus, the different language used suggests the "grounds of a school" language in section 724.4B is broader than the "real property comprising a public or private elementary or secondary school" language in section 724.4A, especially considering both provisions were part of a larger public policy to better protect schoolchildren from firearms. *See, e.g.,* Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, § 320904, 108 Stat. 1796, 2125 (codified at 18 U.S.C. § 922(q)(1)) (providing Congressional findings that "firearms . . . have been found in increasing numbers *in and around* schools," "parents may decline to send their children to school [due to concerns about gun violence]," and "violent crime *in school zones* has resulted in a decline in the quality of education" (emphasis added)); *United States v. Lopez*, 514 U.S. 549, 619, 115 S. Ct. 1624, 1659 (1995) (Breyer, J., dissenting) (citing congressional hearings and governmental reports highlighting the connection between firearms *in and near* schools, violent crime, and the decrease in education quality); Avarita L. Hanson, *Have Zero Tolerance School Discipline Policies Turned Into a Nightmare? The American Dream's Promise of Equal*

*Educational Opportunity Grounded in* Brown v. Board of Education, 9 U.C. Davis J. Juv. L. & Pol'y 289, 303 (2005) (noting the Gun-Free School Zones Act of 1990 and the Gun-Free Schools Act of 1994 were passed to address growing concerns with school violence resulting, in particular, from school shootings). The threat of firearm violence to schoolchildren occurs wherever they may be on school-owned property, not just in the traditional classroom setting. *See Gunfire on School Grounds in the United States*, Everytown for Gun Safety, https://everytownresearch.org/gunfire-in-school/12409/#ns (follow "2019" hyperlink; then click on dots on interactive map for information on each school shooting incident) (last visited Sept. 25, 2019) (providing interactive map identifying the location of school shootings in the United States in 2019, twenty-three of which occurred outside the traditional classroom setting, including in school parking lots, playgrounds, football stadiums, outdoor basketball courts, a "gym area," a track, and an auditorium); *see also State v. Finders*, 743 N.W.2d 546, 548 (Iowa 2008) (noting when we interpret criminal statutes, we consider "the evil sought to be remedied," among other things (quoting *State v. Byers*, 456 N.W.2d 917, 919 (Iowa 1990))).

Further, section 124.401A uses the same language as section 724.4A and provides enhanced penalties for distributing or intending to distribute certain controlled substances "in or on, or within one thousand feet of the real property comprising a public or private elementary or secondary school." Iowa Code § 124.401A. In *State v. Peterson*, the defendant had his sentenced enhanced for distributing cocaine in a business's parking lot that was 1232 feet from the closest corner of the "classroom building" but only 138 feet from "the nearest point of the land owned by the school district surrounding and contiguous to the school buildings." 490 N.W.2d 53, 54 (Iowa 1992). He argued the relevant

distance was from the parking lot to the closest corner of the classroom building. *See id.* We determined the real property comprising the high school at issue "include[s] not only the school buildings but also the contiguous land surrounding the buildings." *Id.* at 55.

*Peterson* was decided in 1992. Section 724.4A was enacted in 1994 and used the same statutory language as was at issue in *Peterson,* suggesting the legislature intended the language in section 724.4A to accord with *Peterson*'s interpretation of section 124.401A. *See, e.g., State v. Iowa Dist. Ct.,* 902 N.W.2d 811, 818 (Iowa 2017) (discussing the doctrine of legislative acquiescence). Thus, when the legislature enacted section 724.4B in 1995, the decision to use "grounds" instead of "real property comprising" and just "school" instead of "public or private elementary or secondary school" appears to be a deliberate attempt to make section 724.4B broader in scope than section 724.4A. *Compare* Iowa Code § 724.4B, *with id.* § 724.4A.

A broader interpretation of "grounds of a school" as used in section 724.4B finds additional support from section 142D.3(2)(*d*). Section 142D.3(2)(*d*) prohibits smoking in or on the outdoor areas of "[s]chool grounds," which include "parking lots, athletic fields, playgrounds, tennis courts, and any other outdoor area under the control of a public or private educational facility, including inside any vehicle located on such school grounds." *Id.* § 142D.3(2)(*d*). Although section 142D.3 is in a different part of the Code and uses different language than section 724.4B, the illustrative list of outdoor areas that constitute school grounds under section 142D.3 suggests the legislature intended "grounds of a school" in section 724.4B to encompass more than just the classroom building and immediate surrounding land.

We also consider the consequences of a particular construction. There are practical problems if we hold such complexes are not the grounds of a school. First, such a holding draws an irrational line between schools that are and are not able to build their athletic complexes in the same location as the classroom building. But we do not find a meaningful distinction between an athletic complex built next to the classroom building and one built several blocks away. Similarly, we find no meaningful distinction between an athletic facility, such as a swimming pool, that is on land contiguous to the classroom building and another athletic facility, such as a football stadium, that is not on land contiguous to that same classroom building. We are doubtful the legislature concluded students involved in school events at the stadium are less worthy of protection than those engaged in school events at the pool.

Such a holding also requires a cabined notion of education. Education is not limited to only that which occurs in the traditional classroom setting. Many schools offer classes that are not in such a setting but still take place on school-owned property—e.g., marching band, weightlifting and conditioning, and shop. The location of these classes is sometimes not in the same building or location as the classroom buildings. *See 2019 Marching Blue Devils*, Davenport Central Instrumental Music (July 17, 2019), http://nebula.wsimg.com /23d2809ee6b463f9b28a88c515e2d95b?AccessKeyId=B0B15BF32692D 84C6C14&disposition=0&alloworigin=1 [https://perma.cc/B7LR-K5AE] (Davenport Central marching band's fall 2019 schedule indicating attendance at certain events at Brady Street stadium is required); *cf. State v. Becker*, 818 N.W.2d 135, 139 (Iowa 2012) (noting the weight room where Mark Becker shot and killed his former football coach was a temporary weight room that was set up in the bus barn after the Aplington-

Parkersburg High School was damaged by a tornado), *overruled on other grounds by Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 707–08, 708 n.3 (Iowa 2016).

Moreover, the State of Iowa considers participation in an organized and supervised athletic program as part of the mandatory requirement for graduation. The legislature requires a student in high school to participate in physical education activities to graduate. *See* Iowa Code § 256.11(5)(*g*)(1); Iowa Admin. Code r. 281—12.5(5)(*f*) (2019). In lieu of participating in a physical education activity, a student can participate in an organized and supervised athletic program. Iowa Code § 256.11(5)(*g*)(1)(b); Iowa Admin. Code r. 281—12.5(19)(*a*). The football game on September 22 would qualify as such a program. *See* Iowa Admin. Code r. 281—12.5(19)(*a*)(1)–(2). It would thus be nonsensical to hold section 724.4B does not protect the participants in and spectators of such a school activity from potential gun violence. We always look for an interpretation of a statute that is reasonable and avoids absurd results. *Colwell v. Iowa Dep't of Human Servs.*, 923 N.W.2d 225, 233 (Iowa 2019).

Finally, in the area of law dealing with tax exemptions for school property, a Wisconsin court found the location of a property does not determine whether the property is subject to taxation or exempt from taxation. *Trs. of Ind. Univ. v. Town of Rhine*, 488 N.W.2d 128, 130 (Wis. Ct. App. 1992). Rather the use of the property determines its taxable status. *Id.* Thus, the court concluded, "Non-adjoining property may constitute 'grounds' of a college or university." *Id.* The court went on to give specific examples. It stated,

> We can envision numerous scenarios in which a college or university might, for a particular activity or course of study, own property which does not adjoin the main campus but which nonetheless might be considered, given the proper use,

as part of its grounds—an arboretum, for example, or agricultural land and its buildings, or an athletic field or stadium.

*Id.* at 130–31.

In Iowa, we have applied a similar analysis to property of a college run by a church. *Trs. of Griswold Coll. v. State*, 46 Iowa 275, 281–82 (1877). There, the school owned parcels of land separated by a street. *Id.* at 277. The residences for the bishop and a professor were located on a parcel across the street from the college building. *Id.* In determining whether the residences were exempt, the court held the residences were "proper and appropriate to effectuate the objects of the institutions." *Id.* at 282. We reaffirmed *Griswold College* in *St. Ambrose University v. Board of Review*, 503 N.W.2d 406, 408 (Iowa 1993) (en banc). There we characterized the test as whether there is a "sufficient nexus between the purposes of the University and a child care facility." *Id.* at 407.

In situations like the instant case, there is a sufficient nexus between the purpose of the school and the stadium complex. That purpose is to further the education of athletes, band members, cheerleaders, and students attending school-related events. Just because the stadium is not contiguous to the classroom building does not mean its purpose is lessened.

Consideration of these factors of construction persuades us that "grounds of a school" as used in section 724.4B includes more than just the classroom building and that building's immediate surrounding land. This conclusion is consistent with zoning and tax laws as pointed out by Justice McDonald's special concurrence.[1] This conclusion is also

---

[1]We do not think an application of laws without searching for legislative intent of the particular statute fully answers the question of legislative intent, especially considering zoning laws are generally enacted by municipalities.

consistent with the primary purpose of section 724.4B, which is to protect children at school events from firearm violence, regardless if that event is regular classroom instruction, a sporting or other extracurricular event, or something in between. *See, e.g., State v. Gonzalez*, 718 N.W.2d 304, 308 (Iowa 2006) (noting when we interpret a statute, we look for an interpretation that "best achieves the statute's purpose"). We hold "grounds of a school" can include school district-owned athletic facilities that are not part of or built on the land contiguous to the classroom building.

**B. Whether Substantial Evidence Supports a Finding that the Brady Street Athletic Complex Qualifies as the Grounds of a School.** Having concluded that "grounds of a school" as used in section 724.4B can include school district-owned athletic facilities that are not contiguous to the classroom building, we must determine whether there is substantial evidence that the Complex and the pertinent parking lot qualify as grounds of a school.

Evidence in the record reveals the Davenport Community School District owns the Complex. Additionally, the evidence, when viewed in the light most favorable to the State, reveals the parking lot where Captain Brown encountered Mathias is part of the Complex. We also find the signage at the Complex and its parking lots identified the Complex and the lots as owned by the Davenport School District. Finally, the evidence reveals that the Complex's facilities were being used for school-sponsored activities at the time. Thus, there is substantial evidence that the Brady Street Athletic Complex, including the south parking lot, qualifies as grounds of a school.

The district court did not err in denying Mathias's motion for judgment of acquittal.

**V. Whether the District Court Properly Instructed the Jury that the Grounds of a School May Include Recreational and Cultural Facilities.**

Mathias contends Jury Instruction No. 18 was incorrect because it (1) was not needed and (2) included a definition for the term "school" that does not comport with the statutory definition of "school" from section 280.2—i.e., as contemplated in section 724.4B. We disagree.

A judge in a criminal case is required to give jury instructions on the applicable law as to all the material issues in the case. *Becker*, 818 N.W.2d at 141. When the Code does not define a term in a criminal statute, the district court must engage in statutory construction and define that term for the jury. *See State v. Kellogg*, 542 N.W.2d 514, 516 (Iowa 1996).

Here, the Code did not define "grounds of a school" in the statute. The district court engaged in its own statutory construction and determined "grounds of a school" includes recreational facilities such as this Complex. We come to the same conclusion as the district court in this opinion. Accordingly, the district court did not commit error when it instructed the jury.

**VI. Disposition.**

For all the reasons set forth in this opinion, we affirm the judgment of the district court.

**AFFIRMED.**

Appel, Waterman, and Christensen, JJ., join this opinion. McDonald, J., files a concurring opinion in which Waterman and Christensen, JJ., join. Mansfield, J., files a dissenting opinion.

#18–1119, *State v. Mathias*

**McDONALD, Justice (concurring specially).**

The majority and the dissent disagree on whether the statute at issue limits the "grounds of a school" to those grounds contiguous to the classroom building. I write separately because it seems to me neither opinion addresses the first step in the analysis: what comprises a school within the meaning of the statute.

This court has adopted a broad definition of the word school. We have said "[a]n accepted definition of school is 'a place for instruction in any branch or branches of knowledge.'" *Livingston v. Davis*, 243 Iowa 21, 26–27, 50 N.W.2d 592, 596 (1951) (quoting *Alexander v. Phillips*, 254 P. 1056, 1058 (Ariz. 1927), *abrogated on other grounds by Morgan v. Bd. of Supervisors*, 192 P.2d 236, 240 (Ariz. 1948)). In the same case, we stated a school "is 'a place where instruction is imparted to the young.'" *Id.* at 27, 50 N.W.2d at 596 (quoting *People v. Levisen*, 90 N.E.2d 213, 215 (Ill. 1950)). A school is not limited to a single type of structure or even a single structure:

> The word "school" is a generic term with many definitions, as may be a statutory term, and generally denotes an institution or place for instruction or education, or the collective body of instructors and pupils in any such place or institution. A "school" is a place where instruction is given or imparted to the young, or place for systematic instruction in any branch or branches of knowledge given by methods common to schools and institutions of learning. . . .
>
> . . . A school is single and entire notwithstanding it is held and conducted in two or more buildings. The number of persons being taught does not determine whether the place is a school.

78 C.J.S. *Schools and School Districts* § 1, at 25–26 (2018) (footnotes omitted).

Given the broad definition of the word school, it is not surprising Iowa courts have already concluded an athletic facility where instruction is given falls within the meaning of a school. In *Livingston*, in support of our conclusion that a school was any place where instruction was imparted to the young, we quoted the Arizona case of *Alexander*. 243 Iowa at 27, 50 N.W.2d at 596. In *Alexander*, the court held a stadium was a schoolhouse:

> For the foregoing reasons, we are of the opinion (1) that physical education is one of the branches of knowledge legally imparted in the Phoenix union high school; (2) that competitive athletic games and sports in both intra and inter mural games are legal and laudable methods of imparting such knowledge; and (3) that a structure whose chief purpose is to provide for the better giving of such competitive athletic games and sports as aforesaid is reasonably a schoolhouse within the true spirit and meaning of [the statute].

254 P. at 1059. In *Montague v. City of Cedar Rapids*, the court of appeals held that a gymnasium was a "school" within the meaning of a zoning ordinance prohibiting an adult bookstore from being operated within a certain distance of a school. 449 N.W.2d 91, 94–95 (Iowa Ct. App. 1989). The court explained that "the use of the building, not the type of the building, is determinative" in whether a building should be considered a school. *Id.* at 93. The gymnasium at issue in that case "provided physical education and gymnastics training" and "had approximately 100 child and adult students." *Id.* at 94. This was sufficient for the court to conclude the building was a "school" within the meaning of the ordinance. *See id.* at 94–95.

A number of courts have similarly held that a gymnasium, stadium, or athletic complex is a school or a school building. *See, e.g.*, *JH2K I LLC v. Ariz. Dep't of Health Servs.*, 438 P.3d 676, 680 (Ariz. Ct. App. 2019) ("Moreover, Arizona courts have long interpreted the word 'school' to refer

to the entire organization—consisting of buildings, grounds, and classrooms—and not to any particular structure used by the institution."); *Young v. Linwood Sch. Dist. No. 17*, 97 S.W.2d 627, 629 (Ark. 1936) (holding a gymnasium was a "school building" and stating the court "cannot agree with appellant that the words 'school buildings' . . . should be restricted to such buildings as are used exclusively for mental training or for the teaching of such subjects as are ordinarily taught in the public schools"); *In re Savannah Special Consol. Sch. Dist.*, 44 So. 2d 545, 547 (Miss. 1950) (en banc) ("We think a gymnasium is a school building, within the meaning of the statute."); *Nichols v. Calhoun*, 37 So. 2d 313, 314 (Miss. 1948) (en banc) ("We do not find it necessary to belabor the question whether a school stadium is a school building. . . . In such a case it has been held that a school stadium i[s] a schoolhouse within statutes such as we are here considering."); *In re Sch. Bd. of Sch. Dist. No. U2-20 Jt.*, 377 P.2d 4, 6–7 (Or. 1962) (en banc) (stating an enclosed swimming pool was a "school building"); *Commonwealth v. Davis*, 734 A.2d 879, 883 (Pa. Super. Ct. 1999) (finding a "school encompasses not only the school building itself, but includes all of the school property located in a zone where children have access"); *Jones v. Sharyland Indep. Sch. Dist.*, 239 S.W.2d 216, 218 (Tex. Civ. App. 1951) ("It has been definitely held in this State that a gymnasium is a school building."); *City of Burlington ex rel. Bd. of Sch. Comm'rs v. Mayor of Burlington*, 127 A. 892, 898 (Vt. 1925) (stating a gymnasium is a school building).

I respectfully disagree with my colleagues that a school, within the meaning of the statute, is limited to the single building housing classrooms. In *State v. Green*, the court held that a "school grounds" includes the physical plant comprising the school and the grounds contiguous thereto. 567 S.E.2d 505, 509 (S.C. Ct. App. 2002). Notably,

while the court did conclude the grounds must be contiguous to the school, the court did not limit the word school to the building housing classrooms. Instead, the court used the term "physical plant." *Id.* The physical plant of a school can include multiple buildings. *See* 78 C.J.S. *Schools and School Districts* § 1, at 26 (stating "[a] school is single and entire notwithstanding it is held and conducted in two or more buildings"); *see, e.g., M.K. v. Roselle Park Bd. of Educ.*, No. 06–4499 (JAG), 2006 WL 3193915, at *6 (D.N.J. Oct. 31, 2006) (noting the physical plant "consists of several buildings"); *Supervisor of Assessments v. Landon Sch. Corp.*, No. 989, 1978 WL 1499, at *1 (Md. T.C. Apr. 5, 1978) (noting multiple "buildings are used to provide additional physical plant area when needed" to supplement the "main building provid[ing] classroom space" and to "enhance the Respondent's educational objectives by providing an atmosphere conducive to learning and necessary for the school's administration"); *Johnson v. N.Y.C. Health & Hosps. Corp.*, 676 N.Y.S.2d 38, 39 (App. Div. 1998) ("The hospital center's enormous physical plant encompassed approximately one million square feet in several separate buildings with numerous entryways."); *In re Estate of McKee*, 108 A.2d 214, 242 (Pa. 1954) (describing the "main physical plant" of a school as "consist[ing] of five buildings on about 16 1/2 acres of land in Great Barrington, Massachusetts, formerly occupied by a school for boys, but now abandoned").

I would thus hold the "grounds of a school" includes those parts of the physical plant of a school, including all grounds contiguous thereto, where programming or instruction is delivered to students. *See Green*, 567 S.E.2d at 509.

With that understanding, I agree there was sufficient evidence to support the defendant's conviction, and I agree the jury instruction was

correct. The Brady Street Athletic Complex is not merely on the grounds of a school, it comprises the physical plant of a school within the meaning of the statute. The evidence showed the complex is owned by the school district and is one of the buildings comprising the physical plant for two different public schools. Each of the public schools uses the complex to deliver curricular and extracurricular instruction to their respective students. The defendant was on the grounds of the complex. Specifically, the defendant was in the parking lot contiguous to the complex in possession of a firearm. Moreover, the defendant was on fair notice the complex was part of the physical plant of a school and the parking lot was thus "grounds of a school." There was large signage throughout the complex that identified the complex as part of the physical plant of the local public schools. Below is a single example:



For these reasons, I concur in the judgment.

Waterman and Christensen, JJ., joins this special concurrence.

**MANSFIELD, Justice (dissenting).**

I respectfully dissent.

This case involves the following criminal statute:

A person who goes armed with, carries, or transports a firearm of any kind, whether concealed or not, on the grounds of a school commits a class "D" felony. For the purposes of this section, "*school*" means a public or nonpublic school as defined in section 280.2.

Iowa Code § 724.4B(1) (2018). The question here is what does "grounds of a school" mean? I think it means "a school plus contiguous real property." The majority concedes that this is at least a reasonable interpretation of the statute. I think it's the correct one here.

My view finds support in *Webster's Dictionary*. One definition of "grounds" is "the gardens, lawn, and planted areas immediately surrounding and belonging to a house or other building." *Grounds*, *Webster's Third New International Dictionary* (unabr. ed. 2002). Another definition is "an area appropriated to or used for a particular purpose." *Id.* The majority cites both definitions, but I think the first definition—which focuses on *geography*—is more apt than the second definition—which focuses on *purpose*. We are interpreting the phrase, "grounds of a school." Normally, one would not use the preposition "of" to denote the *purpose* of something. So the geographic emphasis rings more true to me.

South Carolina makes it a separate offense to engage in drug trafficking "in, on, or within a one-half mile radius of the *grounds* of a public or private elementary, middle, or secondary school." *State v. Green*, 567 S.E.2d 505, 509 (S.C. Ct. App. 2002) (quoting S.C. Code Ann. § 44-53-445(A) (2002)). In *Green*, the South Carolina Court of Appeals upheld a conviction after construing the statute as follows:

Section 44–53–445 clearly and unambiguously prohibits distribution of a controlled substance within a one-half mile radius of school *grounds*. The term "grounds," in common and ordinary usage, means the "land surrounding or attached to a house or other building." *Webster's New World College Dictionary* 627 (4th ed. 1999). We therefore find the term as used in § 44–53–445(A) includes all school-owned property contiguous to or surrounding the school's physical plant.

*Id.*

There is a further point to be made. Criminal statutes ought to give fair notice to the public of the conduct that is prohibited; we enforce that concept through the rule of lenity. *See State v. Lindell*, 828 N.W.2d 1, 13 (Iowa 2013). There is good reason to believe that this statute did not give fair notice. For one thing, the defendant himself believed his conduct was lawful. When asked, "Do you have a firearm on you?" the defendant replied, "Yes, but I have a permit." He then showed the police officer his permit. More importantly, the police officer was unsure. It should be noted that this officer was a twenty-three-year veteran of the Davenport Police Department. He was working off-duty for the school district that night, something he had done for more than the last ten years. And yet—despite all that experience—he did not know whether the defendant's possession of a firearm in that location was illegal. The officer testified,

Q. Now, in my reading of this case, and correct me if I'm wrong, I think charges weren't filed until a couple weeks after this event took place. Can you kind of walk us through that process. A. Yes. So when I was dealing with him there, I made the determination based on where we were and people coming and going as a risk factor for me out there, for him, for those coming and going, that I was just going to get him on his way. I wanted to make sure that since the applicable law said "school," that Brady Street Stadium applied, so I felt that I needed to make sure that I was confident in the applicable law before I took him into custody if that was the case. So I allowed him to go. And then after that, I met with the County Attorney's Office in the weeks after, spoke with

them about the case that I had, presented what I had seen and what I had done up there, and then that's when the charges were filed thereafter.

We have invoked the rule of lenity numerous times in our recent decisions. *See, e.g., In re Prop. Seized from Bo Li*, 911 N.W.2d 423, 429 (Iowa 2018) ("The State's statutory interpretation . . . would violate 'the rule of lenity, which guides us to resolve ambiguous criminal statutes in favor of the accused.'" (quoting *State v. Hagen*, 840 N.W.2d 140, 146 (Iowa 2013))); *State v. Nall*, 894 N.W.2d 514, 519 (Iowa 2017) ("[U]nder the rule of lenity, we take a narrow approach to construing ambiguous criminal laws."); *State v. Hoyman*, 863 N.W.2d 1, 18 (Iowa 2015) ("[T]he principle that we construe criminal statutes narrowly, otherwise known as the rule of lenity, should be taken into account.").

In my view, this is a case where "reasonable doubt persists *after* the traditional canons of interpretation have been considered." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 197 (2012) [hereinafter Scalia & Garner]. Accordingly, I would apply the rule of lenity here. It favors a narrow construction of the term, "grounds of a school," as referring only to a school and its surrounding real estate. *Cf. State v. Shelley*, 15 A.3d 818, 819, 823–24 (N.J. 2011) (vacating the defendant's conviction for distributing cocaine within a school zone after holding that a daycare center with one full-day kindergarten program staffed by a state-certified teacher did not constitute an "elementary school").

Concerning the majority's reasoning, I have the following observations. First, the majority says, "When interpreting a statute, we seek to ascertain the legislature's intent"—quoting *State v. Lopez*, 907 N.W.2d 112, 116 (Iowa 2018). I agree *Lopez* and other cases say that. But they're wrong. Statutory interpretation is not a quest for legislative intent.

*See* Scalia & Garner at 29–30, 391–96 (discussing "[t]he false notion that the purpose of interpretation is to discover intent"). Legislative purpose may be relevant in interpreting ambiguous language, *see* Iowa Code § 4.6(1), but it is merely part of the journey, not a destination. To be fair to defendants, and fair to the legislature itself, we cannot let our perceptions of legislative intent override statutory text.

Second, the majority places considerable weight on a textual difference between Iowa Code section 724.4A(1) and Iowa Code section 724.4B(1). Section 724.4A, which was passed in 1994, doubled the fines for certain offenses committed in a "weapons free zone," which was defined as "the area in or on, or within one thousand feet of, the real property comprising a public or private elementary or secondary school, or in or on the real property comprising a public park." *See id.* § 724.4A(1)–(2). Section 724.4B(1) was adopted the following year and, as noted, made possession of a firearm "on the grounds of a school" a class "D" felony. *See id.* § 724.4B(1). In the majority's view, the difference in wording between section 724.4A(1) and section 724.4B(1) shows the legislature intended "grounds of a school" to mean something other than "the real property comprising a public or private elementary or secondary school."

I think the majority reads too much into too little. The general assembly's passage of Iowa Code section 724.4B responded to just-enacted federal legislation that threatened loss of federal funding for states that did not have zero-tolerance laws for students bringing weapons to school. *See* Gun-Free Schools Act of 1994, Pub. L. No. 103-227, § 1032, 108 Stat. 125, 270–71 (now codified as amended at 20 U.S.C. § 7961 (2018)). Our legislature was under immediate pressure to put a firearms ban in schools in the books. I seriously doubt the general assembly closely

studied section 724.4A beforehand and intentionally chose different language in order to convey a different meaning.

I pause to add a few words on the special concurrence. The special concurrence takes the position that a stadium is *a school itself*. In my view, this bolsters my dissent. If my distinguished colleagues cannot agree on the meaning of "grounds of a school," how is a citizen who wants to comply with the law supposed to know what the term means? The special concurrence also makes much of the prominent notice indicating that the stadium is property of the Davenport School District. The notice, however, refers to the site as an "athletic complex"—i.e., not a school. And notwithstanding this supposedly clear notice, a law enforcement officer who had worked this site for the past decade was uncertain himself whether firearms were forbidden.

For all these reasons, I remain unconvinced that "grounds of a school" as used in this criminal statute includes the parking lot of a football stadium separated by over a mile from the school itself. I would therefore reverse the defendant's conviction on the basis of insufficient evidence.